BARTON v. THE STATE.

1. If two persons mutually agree to go out and fight "a fair fight" without weapons, and if on reaching the place of combat they both abandon their first intention and mutually agree to fight, and do fight, with deadly weapons, and one slays the other, he is guilty of manslaughter at least. But if, on reaching the place of combat, one only of the parties abandons the original intention and manifests a purpose to fight with a deadly weapon, and in pursuance of that purpose advances upon and attacks the other with such a weapon, and the latter, not intending to enter into the other's purpose to have a mortal combat with deadly weapons, but really and in good faith endeavoring to decline engaging in such a combat, simply retreats, or stands upon his defense, and, in order to save his own life or to prevent the perpetration of a felony upon him, of necessity slays his adversary, he is guilty of no offense, but is justifiable in law.

2. The evidence for the State in this case did not warrant a finding by the jury that the accused entered into a mutual intention with the deceased to fight with deadly weapons; nor was the verdict justified by anything contained in the statement of the accused.

3. Nothing appears in any of the several grounds of the motion for a new trial, other than those to which the preceding notes relate, which would require or justify the granting of a new trial.
July 29, 1895.

Indictment for murder. Before Judge BUTT. Irwin superior court. April term, 1895.

Barton was convicted of voluntary manslaughter, and his motion for a new trial was overruled. From the testimony and the prisoner's statement, taken together, the following appears : Barton and Nasworthy had a difficulty, and both agreed to go out and settle it by having "a fair fight," or "a fist and skull fight," without weapons. Barton went ahead, and on reaching the appointed place, pulled off his coat and laid it on the ground. Nasworthy was seen to have a good sized pocket-knife open in his hand as he approached. They cursed each other, and Barton said Nasworthy must give up the knife as he had agreed to have a fair fight.

About the time or shortly after saying this, Barton drew a pistol. Two or three of the bystanders took the knife from Nasworthy, and one said to Barton, "Won't you fight a fair fight?" "Yes," replied Barton. "Hand me your pistol then," said the other. He took hold of the pistol, and Barton was about to let it go, when Nasworthy, being released, seized a boat paddle (large and heavy enough to produce death), and Barton jerked back the pistol, retreated a few steps and told Nasworthy not to come on to him with that paddle, or he (Barton) would hurt him. Nasworthy struck at Barton's head with the paddle, and hit him on the shoulder. Barton, still backing, fired the pistol at Nasworthy, who followed and struck at him once or twice more, but did not hit him. As he was making this attempt, Barton shot him twice and he fell. According to some testimony, Barton made no effort to shoot until he was struck at twice with the paddle, and it was the third and last blow with the same that hit him on the shoulder. In retreating, he stumbled backward over a log. There was other testimony, that Barton had no pistol out before the paddle was drawn in a striking position, or, that he drew it as Nasworthy picked up the paddle.

J. H. MARTIN and D. B. NICHOLSON, for plaintiff in error. TOM EASON, solicitor-general, *contra*.

LUMPKIN, Justice.

1. We have granted a new trial in this case upon its substantial merits. The law of it is simple. What constitutes a case of mutual combat is very well settled by the authorities, and need not be here repeated. When, however, two persons by agreement go out to have "a fair fight" without weapons, and when they reach the place of combat, one only of them adheres to the purpose of having a fight of this kind, and the other abandons this purpose and forms and manifests an intention

to attack his adversary with a deadly weapon, it is not only the right, but the duty, of the latter to decline to participate in a deadly combat thus made imminent. Indeed, strictly speaking, no person ought to enter into an agreement to go out and have a fight of any kind : but certainly, one who bargains for an old-fashioned " fist and skull fight" is not bound to enter into a combat involving the lives of both himself and his enemy. If the latter should insist upon having a deadly fight, and the other party in good faith declines going into it and seeks to withdraw from it, he may then stand upon his defense and justifiably use whatever force may be necessary to protect himself.

2. After a very careful examination of the record, we have reached the conclusion that neither the evidence nor the prisoner's statement in the case now under consideration warranted a finding by the jury that Barton, the accused, ever entered into a mutual intention or agreement with Nasworthy, the deceased, to fight with deadly weapons.   It seems quite clear that Barton was willing to have with Nasworthy a "rough and tumble fight " of the kind described by Judge Longstreet in " Georgia Scenes," but when Barton saw that Nasworthy, after procuring an exceedingly dangerous weapon, manifestly intended that the fight should be of a deadly character, he (Barton) did all in his power to decline a struggle of this kind, and did not use his pistol until it became absolutely necessary to do so in order to protect himself from the consequences of a murderous assault which Nasworthy was actually making upon him.

While we are loath to disturb the verdicts of juries, we cannot, in the view we entertain of this case, allow the conviction of Barton for voluntary manslaughter to stand.                                    *Judgment reversed.*