## CLEMENTS *v.* THE STATE.

1. The failure to refer to the prisoner's statement while charging on reasonable doubt was not erroneous, especially where in another part of the charge the jury was fully and correctly instructed as to the statutory provisions in reference to such statement. *Hayes* v. *State,* 114 *Ga.* 25 (3), 29 (40 S. E. 13) ; *Cargile* v. *State,* 137 *Ga.* 775 (74 S. E. 621).
2. Under one phase of the evidence the law of voluntary manslaughter was involved in the case, and the judge erred in omitting to charge on that subject.

JUNE 16, 1913.

Indictment for murder. Before Judge Thomas. Lowndes superior court. March 8, 1913.

*Knight, Chastain & Gaskins* and *E. K. Wilcox,* for plaintiff in error. *T. S. Felder, attorney-general,* and *J. A. Wilkes, solicitor-general,* contra.

ATKINSON, J. Warren Clements on trial for murder was convicted, the jury recommending that he be punished by imprisonment in the penitentiary for life. He made a motion for new trial, which was refused. The bill of exceptions assigns error upon this judgment.

1. After charging the provisions of the Penal Code relative to the statement of the accused, the judge instructed the jury on the subject of reasonable doubt as follows: "A reasonable doubt in the law is one arising out of the case either from want, weakness, insufficiency, or conflict in the testimony, and which leaves the mind of an honest juror wavering and in doubt; a doubt which is not a mere conjecture, but one for which the juror can assign a reason, from having heard the whole case." This charge was assigned as error for the reasons: "(a) It restricted the doctrine of reasonable doubt to the evidence or lack of evidence, and prevented the jury from considering the defendant's statement in determining whether or not the defendant was guilty beyond a reasonable doubt. (b) Because the jury had the right to consider the defendant's statement, and his statement alone or in connection with the other evidence may have been sufficient to generate a reasonable doubt in their minds." For the reasons indicated in the headnote there was no merit in this ground of the motion for new trial.

2. Complaint was made in the motion for new trial, that the judge omitted to charge on the law of voluntary manslaughter. There was conflict in the testimony of the witnesses for the State and the accused. According to some of the evidence for the State the homicide was murder, without mitigating circumstances; while according to that of the defense it was justifiable. However, according to the testimony of D. H. Harrell, a witness for the State, the element of voluntary manslaughter entered into the case. From the testimony of this witness the following appears, among other things: E. J. Griffin and several others, including witness and Warren Clements, the defendant, started on a journey in Griffin's automobile. Several of the party, including the individuals above named, were drinking. After going some distance the automobile was stopped and all of the party alighted. While on the ground Clements fired his pistol. Griffin charged him with shooting his automobile. Clements denied the charge, and explained that he shot at a tree, but the explanation was not accepted. The men did not appear to be angry; but after the shot and controversy above mentioned, in the immediate presence of witness, they stood facing each other on the same side of the automobile, one at the rear and the other at the front. While in this position, witness turned his eyes away from them for "a little bit—a minute or two," when two

pistol shots were fired; whereupon he immediately looked and saw Griffin and Clements shooting at each other. After an exchange of several shots both parties retired. Griffin received a wound, from which, after lingering, he died. Under this evidence the jury might have found that there was an altercation between Griffin, the owner of the car, and Clements, whom he charged with shooting into it; and while apparently the men at the time the first shot was fired and the colloquy about shooting the automobile took place were not angry, the jury might, from all the circumstances, have inferred that the participants in the affray had their feelings aroused against each other by the charge made by one and the denial made by the other, attended by a mutual display of arms, whereby each was incited under a sudden heat of passion to engage in combat. If the jury should find that the parties were thus led into combat with deadly weapons, by which one of them was killed, they would have been authorized to find the slayer guilty of voluntary manslaughter. This theory of the case might have been accepted by the jury rather than that of murder or justifiable homicide, as presented by the testimony of other witnesses; and though no request was made to charge on the subject, the judge should have given an appropriate charge on the law of voluntary manslaughter, and the omission to do so necessitates another trial.

*Judgment reversed. All the Justices concur, except Fish, C. J., and Lumpkin, J., dissenting.*

LUMPKIN, J. In order to reduce a homicide from murder to manslaughter, there must be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied. Provocation by words will not work that result. Penal Code, § 65. Whether it is claimed that the killing was reduced to manslaughter under the exact terms of the code section cited, or on the theory of a sudden quarrel followed by fighting upon the spot or presently procuring weapons and fighting, the reducing facts must appear from the evidence or statement of the accused. It is not contended that such facts appeared in this case from the evidence of any of the eye-witnesses to the entire transaction. The only witness from whose evidence the theory of voluntary manslaughter is claimed to

arise did not testify to any assault or equivalent acts. He testified to the defendant's shooting a pistol, and that he heard some complaint thereof from the decedent. He looked in a different direction for "a minute or two," and when he turned back both parties were shooting. To reduce the killing to manslaughter on this basis would not be because of any evidence authorizing it, but because of lack of evidence,—not on account of anything which the witness saw or heard, but because of what he did not see or hear. A supposition of manslaughter was rather inconsistent than consistent with the state of affairs when the witness looked away. According to his evidence, the defendant had then fired a shot at a tree or the automobile. The decedent was not shown to have drawn his pistol. He had committed no assault, nor had he attempted any. He had merely complained of the shooting which the defendant had done; but the witness said that he heard nothing indicating anger before he looked in another direction. There is no basis in the evidence of this witness for requiring a charge on the subject of voluntary manslaughter, except to surmise what happened when the witness looked away. I do not think a verdict should be upset by such guesswork, merely because one of the witnesses did not see or hear the entire transaction.

In *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934), and numerous cases following the ruling there made, it has been held, that, where the evidence showing a killing does not also show that it was less than murder, the law presumes every homicide to be malicious, until the contrary appears from circumstances of alleviation, excuse, or justification. I do not think the witness mentioned showed any such circumstances, so as to require a charge on voluntary manslaughter. I am authorized to state that Chief Justice Fish concurs in this dissent.