## UNDERWOOD *v.* THE STATE.

1. The evidence submitted to the court was sufficient to show that the dying declarations were made in articulo mortis, and that the declarant was conscious of his condition at the time; and there was no error in submitting the declarations to the jury. *Harper* v. *State,* 129 *Ga.* 770 (59 S. E. 792).
2. When considered in connection with its context, the language, "malice is implied from any deliberate act, however sudden," employed by the judge while instructing the jury, was not calculated to confuse or mislead the jury to the prejudice of the accused.
3. Under one phase of the evidence the law of voluntary manslaughter was involved in the case, and the judge erred in omitting to charge on that subject.

NOVEMBER 16, 1916.

Indictment for murder. Before Judge Searcy. Pike superior court. June 30, 1916.

*Redding & Lester,* for plaintiff in error.

*Clifford Walker,* attorney-general, *E. M. Owen,* solicitor-general, and *Mark Bolding,* contra.

ATKINSON, J. 1, 2. The rulings announced in the first and second headnotes do not require elaboration.

3. The homicide occurred shortly after nightfall, about twenty steps from a path leading from the house of the deceased to a spring two or three hundred yards distant. The deceased, Wes Barclay, his son Charles, the accused, Claude Underwood, and Chester Whatley and another person were at the scene of the homicide. There was evidence for the State tending to show that all of the persons named were seated on the ground, some of them drinking (Wes Barclay included), and all except Wes were gambling, when a quarrel ensued between the members of the party other than Wes. During the quarrel the accused drew his pistol, threatening to shoot Charles, when the deceased raised up and said "Boys, don't do that." The accused thereupon fired upon

Wes, producing a wound which proved fatal after a few days. There was a conflict in the evidence as to the details of the shooting, but Chester Whatley testified to the following, in substance: During the afternoon he had been a guest at the house of the deceased, and started to his home by way of the path, and upon reaching the scene of the rencounter he found the accused and Charles and the deceased quarreling about money. The accused charged Charles with having his money, which Charles denied, and thereupon attempted to draw a pistol. The accused grabbed his arm in an effort to get the pistol away. While those two were thus engaged, the deceased, having another pistol, snapped it at the accused, and then shot at him once and again, and would have shot more had the pistol not failed to fire when he attempted to shoot. The accused succeeded in getting the pistol from Charles, who ran away; and the accused then shot the deceased with the pistol taken from Charles, producing the mortal wound. According to this evidence, under application of the rulings announced in *Pierce* v. *State,* 132 *Ga.* 27 (63 S. E. 792), and *Clements* v. *State,* 140 *Ga.* 165 (78 S. E. 716), voluntary manslaughter was involved, and it was erroneous for the court, without request, to fail to instruct the jury upon that grade of homicide.

*Judgment reversed. All the Justices concur.*