## BUTT *v.* THE STATE.

1. The instruction to the jury as to the form of a verdict of guilty of murder, with recommendation of life imprisonment, did not tend to limit the discretionary power of the jury to render such a verdict.

2. There was evidence from which the jury might have concluded that at the time of the homicide the accused and the person killed were engaged in mutual combat, and the failure of the court to instruct the jury as to the law on that subject was error requiring the grant of a new trial.

3. As the law of voluntary manslaughter was involved in the case, the court should have instructed the jury as to the provisions of the act of August 18, 1919, requiring the jury to prescribe a minimum and maximum term of punishment in the event of a verdict of guilty of offenses falling within the provisions of that act.

4. It is not necessary to pass on the question as to the alleged disqualification of two of the jurors who tried the case, as it will not, of course, arise in another trial.

5. The other grounds of the motion for new trial are without merit, and do not call for special comment.

No. 1831.   June 18, 1920.

Indictment for murder. Before Judge Jones. Union superior court. December 10, 1919.

*William Butt, T. S. Candler, John M. Johnson, Garland M. Jones, B. P. Gaillard Jr.,* and *Morris & Hawkins,* plaintiff in error.

*Clifford Walker,* attorney-general, *J. G. Collins,* solicitor-general, *Pat Haralson,* and *M. C. Bennet,* contra.

FISH, C. J. Ed Butt was found, without recommendation, guilty of the murder of Bass M. Petty, and he brought the case to this court by a bill of exceptions assigning error upon the overruling of his motion for a new trial.

1. The motion complains of the following instruction by the court to the jury: "If you reach the conclusion that the defendant is guilty of the offense of murder, then it is your duty to convict him of that offense, and in that event the form of your verdict would be, 'We, the jury, find the defendant guilty,' and that would mean punishment by death. Should you convict him and recommend him to life imprisonment, then the form would be, 'We, the jury, find the defendant guilty, and recommend that he be imprisoned in the penitentiary for and during his natural life." The punishment there, then, would be imprisonment for and during his natural life." The error assigned upon this instruction is to the effect that in it the court failed to inform the jury that they had the legal right, power, and authority to make such recommendation, in the event of a verdict of guilty, for any reason they deemed fit and proper, or for no reason at all. Error was further assigned upon the expression "Should you convict him and recommend him to life imprisonment," because it "implied a doubt in the mind of the court that the jury would recommend him for life imprisonment," and therefore lessened the probability of the jury making such a recommendation; and was also error because it was an expression of opinion on the part of the court that the jury should not make such recommendation. Prior to the instruction now under consideration in reference to the form of the verdict the court, after charging as to the offense of murder, stated to the jury: "The punishment for persons convicted of murder shall be death, but may be confinement in the penitentiary for life if the jury trying the case shall so recommend." This language is in the Penal Code, § 63. There are many decisions of this court to the effect that the jury in the trial of one charged with murder are

invested by law with the right and power of fixing the punishment by recommendation to life imprisonment, and whether they will so recommend or not is a matter entirely in their discretion, which is not limited or confined in any case. In such decisions, however, instructions of the trial judge were under review, and the question was whether they tended to limit or confine the uncontrolled discretion of the jury in respect to recommendation of life imprisonment. See *Cohen* v. *State,* 116 *Ga.* 573 (42 S. E. 781). The instruction here complained of had no tendency of that character, but was sufficiently broad to authorize the jury to exercise their unlimited discretion as to recommendation; and the section of the Penal Code on the subject having been given to them, we are unable to perceive how they were likely to have been misled. If further instruction as to the unlimited right and power of the jury to recommend life imprisonment was desired, an appropriate and timely written request therefor should have been made. The assignment of error is therefore held to be without merit. Nor is the instruction subject to the criticism that the judge therein expressed or intimated any opinion that the jury should not make a recommendation to life imprisonment.

2.  Error is assigned upon the failure of the court to instruct the jury as to the law of mutual combat, the movant contending that there was evidence requiring an instruction on that subject. The evidence set out in the motion to sustain such contention is to the following effect. Mrs. Gurley, a witness for the defendant, testified, in substance, that Butt, the accused, said to Petty, the deceased, that Petty had killed the hogs of Butt, and that he had found them on the branch that morning. Petty replied, he didn't dispute that Butt had found them, but that he, Petty, didn't kill them. Butt drew a mark and said to Petty, "If you come to that mark, I will whip you." Petty came to the mark. Butt ran to the woodpile. Petty thereupon went to the mark with an open knife in his right hand. At the time Butt fired at Petty, the latter was trying with his left hand to catch Butt, and was running towards him; and Butt "kinder" jumped back in front of Petty, when Butt shot, and Petty like to have got him before he attempted to shoot him. At the time Butt fired Petty was running at him with the knife.

F. H. Anderson, a witness for the State, testified, in part, sub-

stantially as follows: "Just before the shooting I heard loud talking and looked back towards Stroud's store and saw Butt and Petty and Stroud standing there. Butt and Petty were in a controversy about some hogs, it seemed. Butt told Petty he had killed two of Butt's hogs, and that he had found them where Petty had buried them. Petty said, 'I didn't kill them, and I don't know who did kill them,' and Butt walked down a little ways towards the front of the post-office, made a mark with a stick, and dared Petty to the mark. Petty walked down in the direction of the mark very deliberately and stopped at the mark; some other words were passed between them, and Butt walked around to the south and turned back straight down again. . . The next time I looked around was after the shooting commenced; when the first shot fired I jumped up and turned and looked as straight as I could in a very few seconds, and Ed [Butt] started running and Petty was behind a big sycamore tree in front of Stroud's place, and that obscured the view from me, and I didn't see Petty until he started running after Ed, after Ed commenced shooting, and he ran until he fell in the street."

W. H. Stroud, a witness for the State, testified in part substantially as follows. Butt and Petty were cursing each other all the time during the first, second, and third rows. Butt didn't curse any more than Petty; both cursed about the same; they got up at same time. Butt had his hand in pocket. Petty drew his knife.

The motion quotes a part of the statement made by the accused to the jury, as follows: "I walked in front of Stroud's store and Petty was there, and I seen him and said, 'Petty,' I said, 'Bass, did you kill my hogs?' and he said, 'No,' and I said, 'Who did?' and he said he didn't know and intimated like he did, and I said, 'You had the boy to,' and he said, 'No, you are a damn liar if you think I killed them,' and we got into a cursing row, and I think I called him a son of a bitch, and I got mad and made a mark, and he come at me with his knife, and I walked off and went home; and I had to come back by that place, and Petty was standing under the trees, and I walked by him, and he looked at me and said, 'I ain't a God damn bit afraid of you,' and I said, 'And I ain't a God damn bit afraid of you,' and about that time I says, 'Bass, I can whip you a fair fight,' and he said, 'You are a God damn liar and a damn black son of a bitch,' and leaped at me with

his knife, and I run and seen he was going to catch me, and I fired as fast as I could to stop him, and kept running and he kept running until he fell."

A part of the judgment of the court overruling the motion for new trial is as follows: " Considering the entire charge of the court, the evidence, and defendant's statement, the motion, and as amended, is overruled. During the trial of this case it did not occur to me that the mutual-combat rule was involved and should be charged, and reading the record now it does not seem so. The doctrine of self-defense and the fears of a reasonable man that a felony was imminent was the sole defense made in the trial by the defendant in his statement, his evidence, and argument of counsel. From the evidence of both sides it is clear that when the defendant made a mark and dared the deceased to come to it and called him a vile name, that the deceased drew a knife and advanced to the mark, the defendant retreating, and on the complaint of the deceased the defendant retracted the vile epithet, and the deceased returned to his former place, and the defendant went to his home, returning in a short time, and the cursing was renewed; the defendant contending the deceased renewed it and made at him with a knife; that he retreated and when the deceased was about to overtake him and cut him, he shot to save his life. The State contended that on the defendant returning from his home that he began the cursing; that defendant made another mark and dared the deceased to come to it; and that the deceased refused to go; that the deceased did not move out of his tracks; that the defendant called an outsider as a witness and shot the deceased. If there was ever a mutual intent to fight (which is doubtful, as the defendant retreated) it was when the deceased went to the first mark. When the defendant retracted the deceased retired by going back and declining to go again when dared by the defendant on his return from his home. The deceased seemed to be on the defensive, that is, by his actions he indicated he would protect himself if the defendant attacked him. There was no mutual combat any where in the defendant's statement or evidence. From the State's evidence, if the deceased ever intended to fight, it had been abandoned by his retiring and declining to accept the defendant's challenge."

In his charge to the jury the judge read the entire section 65 of the Penal Code, defining the offense of voluntary manslaughter,

and instructed the jury as to the essential difference between the crime of murder and that of voluntary manslaughter, and further gave them the form of verdict for voluntary manslaughter in the event the jury should find the accused guilty of that offense.

The evidence above set forth, in our opinion, tended to sufficiently raise the issue as to whether or not there was a mutual combat between the accused and the deceased, at the time of the homicide, as to require an instruction, without a written request, as to the law of mutual combat in connection with that of voluntary manslaughter. In *Waller* v. *State,* 100 *Ga.* 320 (28 S. E. 77), it was held: "There being, on the trial of an indictment for murder, evidence which, if credible, would have warranted a finding that the slayer and the deceased, upon a sudden quarrel, each being armed with a deadly weapon, mutually engaged in a mortal combat, each using his weapon and intending to kill the other therewith, it was the duty of the judge, with or without a request, to give in charge to the jury the law of voluntary manslaughter as related to the doctrine of 'mutual combat;' and the omission to do so is cause for a new trial, where the accused was convicted of murder. In such a case merely reading to the jury the sections of the code relating to manslaughter did not sufficiently instruct them as to the law applicable to the issues involved." In *Findley* v. *State,* 125 *Ga.* 579 (54 S. E. 106), it was held: "Under the facts of this case the court erred in not giving in charge the law of mutual combat, or mutual intent to fight." In that case there was no request to charge on mutual combat, and in the opinion it was said: "Where the law of mutual combat is essential for consideration in the case, the charge should submit it to the jury," citing *Waller* v. *State,* supra. In *Higgs* v. *State,* 148 *Ga.* 136 (95 S. E. 994), it was decided: "There was evidence tending to show an agreement between the accused and the deceased presently to fight without weapons, and after commencing the fight the deceased attempted to cut the accused with a knife, and at the same time the accused drew his pistol and fired the fatal shot. The judge charged the jury generally on the law of voluntary manslaughter, but omitted entirely to charge the law of that offense as based upon the theory of mutual combat or mutual intention to fight. *Held,* that the omission was erroneous. *Findley* v. *State,* 125 *Ga.* 579 (3) (54 S. E. 106) ; *Giles* v. *State,* 126 *Ga.* 549 (55 S. E. 405) ; *Clements*

*v. State,* 140 *Ga.* 165 (78 S. E. 716)." See also *Kimball* v. *State,* 112 *Ga.* 541 (37 S. E. 886). From what we have said it follows that the court erred in failing, without a request, to charge as to the law of mutual combat.

3. Another ground of the motion is that the court erred in failing to instruct the jury in accordance with the act approved August 18, 1919 (Acts 1919, p. 387), that if they found the accused guilty of voluntary manslaughter they should prescribe a minimum and maximum term. As the law of voluntary manslaughter was involved, the court should have instructed the jury as to the provisions of that act, even though not requested to do so.

4. As the case must be remanded for another trial, it is not necessary to pass on the ground as to the alleged disqualification of two of the jurors who tried the accused, as that will not be involved in the next trial.

5. None of the other grounds of the motion is of such character as to require elaboration.

*Judgment reversed. All the Justices concur.*

ATKINSON, J., concurring specially. It is the law that a jury trying a defendant for murder has the right and power, in case they find him guilty, to recommend that he be punished by confinement in the penitentiary for life. On this subject, after discussing the statute prescribing the punishment for murder, and decisions of this court, it was said in *Lucas* v. *State,* 146 *Ga.* 315 (7), 326 (91 S. E. 72): "It thus appears from the statute, and the decisions of this court applying it, that in all cases of conviction for murder, whether or not the jury would recommend a life imprisonment is within the discretion of the jury. They may do so with or without a reason, and they may decline to do so with or without a reason. They may do so as a matter of public policy, or out of mere sympathy for the prisoner, or they may decline to do so for reasons of public policy, or on account of absence of sympathy for the accused. The question of recommendation has nothing to do with the issue as to guilt or innocence of the accused. The granting of it in cases of conviction is mere matter of grace that comes after guilt is established." While recommendation to mercy is a matter of grace and comes after guilt is established, it is a matter of grave importance to the accused. On the trial of a defendant charged with murder the judge should clearly state to

the jury that in the event they find the defendant guilty of murder they have the right and power in their discretion to recommend that he be punished by confinement in the penitentiary for life. The instructions to the jury dealt with in the first division of the opinion by implication charged the principle above stated. If more explicit instructions on the subject had been desired, there should have been an appropriate request to charge.