## 22896. CREAMER v. THE STATE.

DECIDED SEPTEMBER 30, 1933.

*B. C. Bilbo, Ezra E. Phillips,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, E. A. Stephens,* contra.

MacINTYRE, J. The opinion of the majority of the court is as follows: The evidence discloses that the violence of the deceased and the provocation of the defendant were equally serious. The defendant started the difficulty by making a felonious assault upon the deceased, and thereupon the deceased defended himself by cutting the defendant. Both cut each other with knives. Under these facts it clearly appears that the resentment of the deceased was not disproportionate to the provocation of the defendant.

The request to charge as set forth in special ground 1 of the motion for a new trial was properly refused, as it was not applicable to the facts of the case, in that there was no evidence that the deceased used any violence disproportionate to the provocation given by the defendant, "or greater in degree than the law recognizes as justifiable under the circumstances." Furthermore, the ground purports to set forth all the evidence that required the giving of the requested charge, and the evidence so set forth clearly fails to show that the violence of the deceased was disproportionate to the previous provocation given by the defendant. And in passing upon the ground, this court can consider only the evidence set forth in the ground. Otherwise the ground would be incomplete and not understandable within itself and could not be considered.

In the opinion of the majority of the court, the evidence amply authorized the verdict, and none of the special grounds of the motion shows cause for a new trial. The writer can not agree to the foregoing decision.

The indictment in this case charges that on July 14, 1932, in Fulton county, Georgia, Cleve Creamer murdered Mack Bennett "by then and there cutting, stabbing, and wounding him with a knife." The jury trying the case returned a verdict of voluntary manslaughter, and the exception here is to the judgment overruling the motion for a new trial.

The fatal rencounter took place at about four o'clock on the afternoon of Sunday, August 7, 1932, at an apartment house located on Decatur Street, in Atlanta, Fulton County, Georgia, where the defendant and Mary Bennett were living as man and wife. Mary was the niece of Mack Bennett, the deceased. All the parties were negroes, and Mary was called Mary Creamer, and there is no reason to suspect that Mack Bennett or any of the other negroes thought any the less of Mary and the defendant because they had never been legally married. Mack Bennett had frequently visited his niece, and was visiting her home on the day he was killed.

Fannie Jordan, sworn for the defendant, substantially testified: that she lived with the defendant and Mary in their three-room apartment; that on the afternoon of the homicide the defendant, Mack Bennett, and Ossie Bennett were eating watermelon in the kitchen of said apartment, while witness, Alice Green, and Mary were in the front room; that the defendant left Mack Bennett and

Ossie in the kitchen and "came into the middle room, and goes to shining his shoes," with his shoe resting on a smoothing-iron; that by way of "teasing" Mary, the defendant said: "Mary, I am going off;" that Mary retorted, "Give me my dollar;" that the defendant said, "If you say dollar to me again, I am going to throw this iron at you;" that Mary said, "I will throw this at you" (referring to another smoothing-iron that was near her); that Mack told Ossie "if Cleveland hit Mary with that iron he was going to cut his damn head off;" that Bennett then went out on the porch and sat down; that hearing Bennett's remark, the defendant went out on the porch where Bennett was sitting and asked him if he, defendant, had not always been nice to him; that Bennett replied that "there ain't no use in talking like that, Cleveland;" that Annie Maud then came to get her baby, which Bennett was holding; that the defendant said to Bennett: "If that is the way you have got to do, come up and talk about cutting my damn head off, the best thing you can do is to stay away from my house;" and that Bennett arose from the chair where he was sitting, with his knife behind him, and cut the defendant over the eye with his knife.

Lillie Thomas, sworn for the State, testified in part as follows: "I heard cursing and looked out of the window and seen Cleve standing in the door. Mack was sitting in a chair on the porch, and he was standing behind Mack. Mack had a baby in his arms. Cleve was standing up behind Mack. I heard Cleve curse. He told Mack if he moved he would cut his head off. Mack stayed in the chair. Finally that woman came and got her baby, and they argued a good while. When he jumped up Cleve cut him. After I saw Cleve cut Mack . . I did not see any more. I saw Cleve when he came down the steps and went toward Decatur Street. He was as bloody as he could be. . . I saw him [defendant] hit Mack in the neck. I mean to tell the jury that I saw this man strike the first lick. I did not see any blood come from his neck. . . He [the deceased] had done jumped up out of the chair. Cleve did not cut him before he jumped up."

Annie Binns, sworn for the State, testified, in substance, that she heard the defendant and Mack Bennett arguing, and went to get her baby; that she saw Mack sitting down on the porch with her baby in his lap, and the defendant standing by the door with an open knife in his hand; that when witness patted the defendant on

the shoulder and asked what was the matter, the defendant said: "Keep the God-damn hell out of the way! I am tired of Mack running over me;" that the defendant "cursed again," and witness got her baby from Mack Bennett and walked up the hall; that the defendant was the "only one done the talking," and that Bennett was sitting and looking up in his face. There was testimony that the defendant and Bennett fought desperately with knives for about ten minutes, that each was terribly cut, and that Bennett died in a hospital about three hours after the fight.

In special ground 1 it is urged that the court erred in refusing to give the jury a requested charge. The first part of this charge is in the exact language of the first headnote of the case of *Sams* v. *State,* 124 *Ga.* 25 (52 S. E. 18), which reads as follows: "One who provokes a difficulty may yet defend himself against violence on the part of the one provoked, if the violence be disproportionate to the seriousness of the provocation, or greater in degree than the law recognizes as justifiable under the circumstances." The remainder of the requested charge is a concrete application of this principle of law. There is no question as to the correctness of the charge requested, and the only question presented is whether or not the facts of the case warranted the charge. I have not set out the testimony of all the witnesses, or all the testimony of any witness. However, I have gone into the evidence at some length in order to show whether or not this ground is meritorious. According to evidence adduced in behalf of the defendant, Creamer, Bennett and another negro were eating watermelon in the defendant's kitchen, when the defendant went into an adjoining room and threatened to throw a smoothing-iron at Bennett's niece. Hearing this threat, Bennett remarked to one of the party (not the defendant) that if Creamer struck Mary with the iron, he, Bennett, would cut his damn head off. After making this conditional threat, and without disclosing any intention to carry it out, Bennett went out on the porch, sat down in a chair, and took a baby in his lap. Whether or not Bennett intended that the defendant hear his conditional threat does not appear from the record, but it does appear that the defendant did hear it, and that he was exasperated because of it, for he followed Bennett out on the porch, and, according to the State's witness, Lillie Thomas, cursed and threatened to cut Bennett's head off if he moved. According to testimony presented in behalf of the

defendant, Bennett arose from the chair he was sitting in and cut the defendant over the eye with a knife before the defendant attempted to do any violence whatever to Bennett. Did not the evidence present the theory that the defendant brought on the actual combat by words and threats, and that, without sufficient legal provocation, Bennett attacked the defendant with a knife, and that the deceased then, and not till then, defended himself with his knife? The law controlling the question raised by this special ground is so concisely and clearly stated in the case of *Sams* v. *State,* supra, that I can not do better than quote from that decision as follows: "Undoubtedly, if one provoke a difficulty, and the person provoked resent the affront offered in such a manner and to such an extent as the law recognizes as reasonable and justifiable, the other party to the difficulty will not be justified in repelling by force an assault for which he was directly responsible. Thus, if A draw a knife and advance in a threatening manner upon B, the fact that B, upon such provocation, drew a pistol and fired upon A would not justify A in killing or wounding B. But if the resentment of the party provoked is disproportionate to the seriousness of the provocation, the same rule would not apply. It must be such resentment as a reasonable man would indulge; and if it surpass that, the other party, even though he may have provoked the difficulty, would have the right to defend himself against threatened injury. To pursue the illustration already given, if A speak contemptuously or insultingly to B, or advance upon him in a threatening manner but not under such circumstances as to give reasonable apprehension of serious bodily harm, B would have no right to attempt to take the life of A, and if he did so A would have the right to repel the attempt, though it were necessary to take B's life in doing so. This principle has been announced repeatedly in the decisions of this court. See *Boatwright* v. *State,* 89 *Ga.* 140 [15 S. E. 21]; *Buller* v. *State, 92 Ga.* 606 [92 S. E. 51] *Fussell* v. *State, 94 Ga.* 78 [21 S. E. 125]; *Barton* v. *State, 96 Ga.* 435 [23 S. E. 827]." I think that the theory of law invoked by the requested charge was supported by evidence in the case, and that the court committed error in refusing to give the charge requested. In my opinion, the judgment should be reversed.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur. MacIntyre, J., dissents.*