### 21895. PARKER v. THE STATE.

ARGUED JANUARY 14, 1963—DECIDED
FEBRUARY 15, 1963.

*John G. Davis, Stow & Andrews,* for plaintiff in error.
*Ben F. Carr, Solicitor General, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

GRICE, Justice. The denial of a motion for new trial following a conviction for murder with recommendation of mercy and sentence to life imprisonment is for review here.

Jesse Lafayette Parker was tried in the Superior Court of Rabun County upon an indictment charging him with the murder of Ronald Hicks Rogers. His amended motion for new trial contained the general and five special grounds of alleged error. The latter five complained of the trial court's failure to charge on the subjects of manslaughter, voluntary manslaughter, involuntary manslaughter and mutual combat, and also its charging upon admissions and incriminating statements.

The undisputed evidence was that the defendant shot and killed the deceased with a pistol on the night of July 14, 1962,

at "Hop's Place" in Rabun County. In events leading up to the shooting the deceased, accompanied by three other persons, including a brother, had arrived there first in a truck. Shortly afterward the defendant, with four others, had driven up in an automobile.. Argument immediately ensued between the occupants of these two vehicles. As to what transpired between their arrival at "Hop's Place" and the homicide, the evidence was in sharp conflict.

Some of the testimony was that the defendant and the deceased began to argue; that one of the others in the car with the defendant had a pistol which was unloaded; that the defendant took it from him, saying he would get some shells; that the defendant left the group and was gone from five to seven minutes; that while returning the defendant fired one pistol shot in another direction; that after his return he and the deceased resumed argument; that the deceased did not have a knife and did not threaten the defendant in any manner; that they decided to fight without weapons; that the defendant laid a pistol upon one of the nearby motor vehicles and then got another from under his belt and shot the deceased while they were eight or ten feet apart and while the deceased was standing still.

There was contrary testimony, including that the defendant warned the deceased against attacking him during their fatal encounter; that the deceased advanced toward and swung at the defendant twice with a knife which was described as a deadly weapon, attempting to cut him with it; that after the defendant urged the deceased's brother to stop the deceased, but to no avail, the deceased continued to advance and strike at him with the knife; and that the defendant then fired the fatal shot.

Furthermore, there was testimony showing that certain members of the deceased's group, including the deceased, went to this place "to fight"; that during the argument between them the deceased told the defendant that while the defendant used to whip him when they were in grammar school he didn't think he could now and wasn't afraid of him; that when that was said the deceased had a knife in his hand, "just a small

knife, the kind you carry in your pocket"; that the defendant and the deceased "said they were going to fight"; that the deceased told the defendant "if he would put the gun up he would fight him fair" and the defendant laid the pistol he had in his hand on the back of a car; that they "started to swing"; and that the defendant stepped backwards, got another gun from under his belt and shot the deceased.

■ Considering first the evidence in the light of the general grounds of the motion for new trial we find that it supports the verdict. The court instructed the jury to determine whether the defendant was guilty of the crime of murder or was justified in the killing and therefore not guilty of any crime. With conflicts in the evidence, as indicated by the recital above, the jury chose to accept the version that the defendant shot and killed the deceased with malice aforethought. Being supported by evidence and approved by the trial judge, the verdict will not be set aside as urged by the general grounds of the motion for new trial.

■ Next, we consider the special ground of the motion which complains that the court erred in instructing the jury on the subject of admissions and incriminatory statements. The objection is that this portion of the charge was not authorized by the evidence and was an expression of opinion in violation of *Code* § 81-1104. Authorization for the charge was provided by the Sheriff of Rabun County, who swore that the defendant told him that "the boy was coming at him with a knife, and he shot him." This statement of the defendant, considered with other facts and circumstances as brought out in the evidence, tended to establish some of the essentials of the crime. The charge on this subject did not, as we view it, constitute an expression of opinion. This portion of the charge was not erroneous. *Sheffield v. State*, 188 Ga. 1 (2) (2 SE2d 657). Also see *Pressley v. State*, 201 Ga. 267, 270 (39 SE2d 478).

■ Nor was it erroneous for the trial court not to charge the jury as to involuntary manslaughter, as is contended in one of the special grounds. As we evaluate the evidence, this offense was not involved. None of the evidence authorized the conclusion that the killing was unintentional. Furthermore, the

defendant's unsworn statement to the jury did not require such charge. The defendant's claim that he attempted only to shoot the deceased in the shoulder "to stop him and keep him off of me with a knife," was not evidence, and no request being made for such charge, its omission was not error. *Wilson v. State*, 215 Ga. 672 (5) (113 SE2d 95).

■ Likewise, it was not error for the trial court to fail to charge the principle of mutual combat, as urged in another of the special grounds. As we appraise the evidence, that offense was not involved. Although there was evidence that the deceased and the defendant agreed to "fight with fists" or to "fight fair," there was none which would authorize a finding of *mutual* intention to fight with deadly weapons. From the conflicting evidence adduced, several versions of the homicide are authorized. However, none of them includes the essential element of mutual combat—mutuality as to the type of combat which actually took place. There was no evidence of any agreement except to "fight with fists" or to "fight fair." According to some of the testimony the defendant alone abandoned that agreement and shot the deceased; according to other testimony the deceased alone abandoned that agreement and advanced on the defendant with a knife so that the defendant had to shoot to protect himself. But there was no testimony that *both* mutually abandoned that agreement in favor of one to fight with deadly weapons.

Closely in point and, in our view, controlling here is *Barton v. State*, 96 Ga. 435 (23 SE 827). There, this court, in holding that mutual combat was not involved, explained the principle as follows: "If two persons mutually agree to go out and fight 'a fair fight' without weapons, and if on reaching the place of combat they both abandon their first intention and mutually agree to fight, and do fight, with deadly weapons, and one slays the other, he is guilty of manslaughter at least. But if on reaching the place of combat, one only of the parties abandons the original intention and manifests a purpose to fight with a deadly weapon, and in pursuance of that purpose advances upon and attacks the other with such a weapon, and the latter, not intending to enter into the other's purpose to have a mortal

■

combat with deadly weapons, but really and in good faith, endeavoring to decline engaging in such a combat, simply retreats, or stands upon his defense, and, in order to save his own life or to prevent the perpetration of a felony upon him, of necessity slays his adversary, he is guilty of no offense, but is justifiable in law." *Barton v. State,* 96 Ga. 435 (1), supra.

■ However, as to the two grounds complaining of failure to charge on the subjects of manslaughter and voluntary manslaughter, we conclude that there was reversible error. The crime of voluntary manslaughter was involved, according to our analysis.

Three versions of this killing are apparent from the evidence adduced here. One was murder in that the defendant, with malice aforethought, slew the deceased. The second was justifiable homicide in that he acted to save his own life and therefore was justified in taking the life of the deceased. Those two principles were charged. Yet there was a third version, that of voluntary manslaughter in that the defendant acted in the heat of passion and without malice. *Code* § 26-1007. The jury should have been instructed as to the law relating to this offense. *Underwood v. State,* 146 Ga. 137 (3) (90 SE 861).

There was, under the evidence here, the question whether the defendant acted with or without malice when he killed the deceased. It is axiomatic that without malice there is no murder. But without it there could be voluntary manslaughter. The rule has been expressed as follows: "It is the passion, under provocation, which extenuates the crime; and what is cooling time is for the jury to determine . . . it would be for the jury to say whether these circumstances were sufficient to deeply arouse the passion of an average rational mind. So, if the defendant had killed [the deceased] under these circumstances, the jury would have been authorized to find the defendant guilty of voluntary manslaughter. It is the absence of malice which differentiates manslaughter from murder. If at the time of the killing the circumstances are such as to exclude malice, then the homicide can not be murder." *Mize v. State,* 135 Ga. 291, 298 (69 SE 173). In view of this rule, the decisions hold that where "under one phase of the evidence the

law of voluntary manslaughter was involved in the case," the judge errs when he omits to charge upon that subject (*Underwood v. State*, 146 Ga. 137 (3), supra) and that this charge is required even without any request. *McLendon v. State*, 172 Ga. 267 (5) (157 SE 475).

In the instant case there was evidence, as shown by the recital of the varying accounts of the fatal encounter, from which the jury could have concluded that the defendant killed without malice but yet not justifiably, so as to require a charge on voluntary manslaughter even without request therefor. Therefore, these two grounds of the motion for new trial, which allege error in the court's failure to charge the definitions of manslaughter and voluntary manslaughter as provided in *Code* §§ 26-1006 and 26-1007 and the punishment for voluntary manslaughter in *Code* § 26-1008, are meritorious.

For the reason stated in Division 5 of this opinion, the trial court erred in denying the motion for new trial, and the judgment is

*Reversed. All the Justices concur. Head, P. J., dissents from the rulings in Division 4 of the opinion.*