## 23883. THAXTON v. THE STATE.

UNDERCOFLER, Justice. Patrick W. Thaxton was convicted of the murder of his wife, Sally Combs Thaxton. The jury recommended mercy and he was sentenced to life imprisonment. The defendant's motion for new trial was overruled and he appeals to this court specifying in his enumeration of errors that, (1) the evidence was insufficient to support the verdict, (2) there was a fatal variance between the allegations in the indictment and the proof on the trial concerning the instrument which caused the death of decedent, and (3) the court erred in failing to charge the jury upon the subject of involuntary manslaughter.

The evidence in this case shows that on the morning of Sunday, June 6, 1965, the defendant, his wife Sally Combs Thaxton, and a friend James Henry Mathews went fishing. They drove to a pond about one mile north of Roberta, in Mathews' automobile after stopping to purchase twelve cans of beer. About midafternoon they left the pond to drive to another pond located near Mathews' residence. At that time all but two or three cans of the beer had been consumed and they stopped to purchase a pint of liquor from which all three had a drink. About dark they left this pond, purchased another pint of liquor and continued drinking until about 11 p.m., when they drove to Mathews' home in Crawford

County.  Mathews parked his automobile on the east side of the house parallel to a carport and headed toward the highway.  There was a pecan tree located southeast of the house approximately 20 to 30 feet from where the automobile was parked.  A cedar clothesline pole was set in the ground between the pecan tree and the house about 10 feet from the tree.  Upon arriving, all three persons had another drink of liquor in the yard using water from a faucet located under the carport.  Mathews got back into the automobile while defendant and the deceased stood near the pecan tree engaged in an altercation.  Mathews heard a blow and observed some shoving and pushing between the defendant and the deceased.  The deceased fell down once but it was "more or less a stumble."  This altercation lasted about fifteen minutes, after which deceased stated she would walk home and she walked away from the house out of view.  At that time she was wearing a blouse and a pair of white shorts.  It was then about 11:30 p.m. and Mathews went into the house, turned on a noisy window fan and went to sleep.  Before going to sleep, he heard "the water spigot run one more time."  Sometime later the defendant awakened Mathews and asked him to drive him and the deceased home.  When Mathews arrived at the automobile, it was parked facing away from the highway, opposite from its position when he went into his home.  The deceased was sitting in the front seat of the automobile, badly beaten, bleeding from the nose, and unclothed except for a sweater fastened with one button.  Defendant and Mathews dressed deceased in a pair of Mathews' pants.  The deceased at that time could not stand alone and was incoherent.  Mathews told the defendant that she needed a doctor and the defendant said that this had happened before and "it don't amount to nothing."  After they arrived at Reynolds they telephoned a doctor, and the doctor recommended from a description of her condition, that she be taken to the hospital at Fort Valley about 15 miles away where they arrived about 3:30 a.m.  The deceased was dead at that time or died immediately thereafter.  Upon examination at the hospital it was found that her body was covered with grass and dirt.  She had multiple injuries: a tremendous amount of her hair had been pulled out by the roots; her scalp was swollen; her eyes were black; her lips, nose and throat were bruised; her buttocks, shins and breasts con-

tained numerous small injuries which indicated she had been dragged feet first; her scalp was torn loose, which indicated a very severe, or series of, severe blunt force injuries; and she had a displaced vertebra, a broken neck, and a superficial layer of skin was missing from around her throat.

The evidence indicates that the defendant was intoxicated at the time the injuries were inflicted and that her blood contained .18 percent alcohol, which was not sufficient to seriously impair her physical abilities.

The evidence also showed an area of trampled grass about twenty feet from Mathews' home and extending to the pecan tree and the upright stationary cedar post. Throughout this area were pieces or "hanks" of hair. The upright stationary cedar post had crushed hair and what appeared to be human skin on it about 18 inches above ground level. Experts testified that the hair on the post and the hair of the deceased were indistinguishable. The plant life in the trampled area and on the deceased's body was the same. The deceased's shoes were found under the pecan tree and her clothing was found scattered in the grass along the highway about a mile away from Mathews' home. There was a button missing from her shorts and a pecan tree tassel was clinging to her underclothing. A button of the same type missing from the shorts was found under the pecan tree by Mathews' home. The evidence indicated the only pecan trees in the general area were located around Mathews' home.

Sheriff Lucious O'Neal testified that when he saw the defendant about 6:00 a.m. on the day of the homicide his hands were bruised around his knuckles enough to be noticeable.

The defendant in an unsworn statement said that before they arrived at Reynolds, the deceased made a "guggling" sound two or three times and that was the last sound she made. He also stated that he did not remember anything from the time they began drinking the liquor until he found himself at Culpepper Creek about one and a half miles from Mathews' home; that the deceased was outside the automobile naked; that he tried to get her into the automobile but "couldn't do much with her" and that he asked James Mathews to "come out there and help me." *Held:*

1. The verdict was amply supported by the evidence. *Eason v. State,* 217 Ga. 831 (125 SE2d 488), and *Ward v. State,* 199 Ga. 203 (33 SE2d 689).

2. The appellant contends that the court erred in rendering judgment on the verdict in this case and in sentencing him to the penitentiary for life since there was a fatal variance between the allegations in the indictment and the proof offered at the trial concerning the instrument which caused the death of the deceased. The indictment charged that the defendant did, "feloniously and with malice aforethought, by the use of the human hands, fists and feet, same being weapons which as used by the accused were deadly and dangerous weapons likely to produce death, make an assault upon Sally Combs Thaxton, and said accused with said weapons did then and there unlawfully, feloniously and with malice aforethought choke, strangle, kick, strike, beat and wound said Sally Combs Thaxton, thereby giving to her mortal wounds, of which said wounds the said Sally Combs Thaxton then and there died." The State's evidence tended to show that an upright stationary cedar post which was in the yard of Mathews' home had crushed hair on it and what appeared to be human skin about 18 inches above the ground level and that the defendant with the use of his hands repeatedly beat the head of the deceased against said post. The evidence showed also that the cause of death was suffocation resulting from the stomach contents aspirating into the lungs because the inflicted injuries interfered with the reflexes and that this condition was contributed to by a broken neck and a bruising of the brain.

There is no merit in the contention of the appellant that the allegations of the indictment that the deceased died through injuries inflicted by the use of human hands, fists and feet was not supported by sufficient evidence. *Smith v. State,* 198 Ga. 849 (4), 856 (33 SE2d 338).

3. The third enumeration of error is that the trial court erred in failing to charge the jury upon the subject of involuntary manslaughter in this case. As we evaluate the evidence, this offense was not involved. None of the evidence authorized the conclusion that the killing was unintentional, the defendant's unsworn statement to the jury did not require such a charge, and there was no request therefor. *Jackson v. State,* 91 Ga. 271 (3) (18 SE 298, 44 ASR 22); *Cofer v. State,* 213 Ga. 22 (2) (96 SE2d 601); and *Parker v. State,* 218 Ga. 654 (129 SE2d 850).

*Judgment affirmed. All the Justices concur.*

Submitted January 9, 1967—Decided January 19, 1967.

*Adams, O'Neal, Steele, Thornton & Hemingway, H. T. O'Neal,* for appellant.

*Jack J. Gautier, Solicitor General, Fred M. Hasty, Arthur K. Bolton, Attorney General, G. Ernest Tidwell, Executive Assistant Attorney General, Carter A. Setliff, Assistant Attorney General,* for appellee.