29821. PARKS v. THE STATE.

HILL, Justice.

This is an appeal by defendant Jessie Parks following his conviction for murder and two misdemeanor pistol counts. He was sentenced to life imprisonment on the murder charge and twelve months on each of the misdemeanor pistol charges to run concurrently with the

life sentence. His amended motion for new trial was overruled.

The evidence for the state showed that at about 8:00 or 9:00 a.m. on April 27, 1974, Mrs. Bobbie Davis saw the defendant, whom she knew, walking down the sidewalk in the neighborhood of her apartment. Mrs. Davis testified that he stopped in front of her door and that he left after she told him not to come again. The defendant's testimony on this point differed. He said Mrs. Davis had been telephoning his mother's home during the preceding week and that he had seen Mrs. Davis that morning at a friend's apartment, not in front of Mrs. Davis' residence.

Both defendant and Mrs. Davis testified that they had "gone together" for a couple of years but that this relationship had ended two or three years before April 27, 1974.

Mrs. Davis testified she was not dating Ezell Seals. At 4:00 or 5:00 that afternoon, she and Ezell Seals were sitting on the sofa in her apartment when the defendant came into the apartment uninvited. She asked him to leave and after about 5 or 10 minutes he did so. She shut the wooden door as well as the screen door behind him.

A few seconds later a shot came through the door and she ran out the back door to call the police. When she returned she found that Mr. Seals had been shot. Mr. Seals died as a result of this gunshot. Two of Mrs. Davis' neighbors testified that they saw the defendant take a few steps away from the door, turn, draw a gun out of his shirt, and shoot at the door. Both of these witnesses said he was alone.

The defendant's version of the events that occurred that afternoon again differs from that presented by the state's witnesses. The defendant testified that he came to Mrs. Davis' apartment that afternoon with another man, that he knocked on the door, and that Mrs. Davis came to the door but that he did not enter the apartment. After a few minutes of conversation with her he started to leave. As he did so the other man handed him a piece of newspaper with a gun inside. He took the gun, pulled the hammer back to look at it, and the gun went off accidentally. He stated that he gave the gun back to the other man and the two men left. About a week later when

he heard that the police were looking for him he turned himself in. He testified that he did not know the name or address of the other man. He also stated that he did not know Mr. Seals, and was not mad at Mrs. Davis or anyone else at the time of the shooting.

The jury found the defendant guilty of murder and two misdemeanor pistol counts. On appeal defendant enumerates 5 errors: the failure to charge the jury on the law of voluntary manslaughter, and the giving of allegedly incorrect charges on criminal intent, the legal definition of malice, the law of accident, and the law of involuntary manslaughter.

1. Defendant contends that the trial court erred in failing to charge the jury on the law of voluntary manslaughter. He argues that where there is any evidence, however slight, as to whether the offense is murder or voluntary manslaughter, instruction on the law of both offenses ought to be given to the jury. *Parker v. State,* 218 Ga. 654 (5) (129 SE2d 850); *Gresham v. State,* 216 Ga. 106 (2) (115 SE2d 191); *Faust v. State,* 208 Ga. 53 (65 SE2d 148). We do not disagree with this statement of the law. However, we find that it is not applicable in the present case.

Code Ann. § 26-1102 defines voluntary manslaughter as follows: "A person commits voluntary manslaughter when he causes the death of another human being, under circumstances which would otherwise be murder, if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . ." After reviewing all of the evidence presented by the state as well as the defendant we cannot find even slight evidence to suggest a theory of voluntary manslaughter. The defendant himself testified that the shooting was an accident and that he was not mad at Mrs. Davis or anyone else at the time of the shooting. The defendant urges that the evidence presented by the state showed the basis for a sudden, violent and irresistible passion. He argues that finding his old girl friend on the sofa with her new friend presents sufficient evidence from which the jury could have concluded that he acted as a result of passion resulting from serious provocation.

However, the evidence showed that the defendant and Mrs. Davis had not gone together for two or three years. Merely finding the two people together on the sofa is not evidence of anything approaching sufficient passion or provocation to warrant a charge on the law of voluntary manslaughter. *Young v. State,* 232 Ga. 285, 290 (206 SE2d 439).

2. The defendant argues that the charge on intention was erroneous in that it was taken from former Code Ann. § 26-202 which has now been supplanted by new Code Ann. §§ 26-603, 26-604 and 26-605. The charge enumerated as error was: "Intention shall be manifested by the circumstances connected with the perpetration of the offense and the sound mind and the discretion of the person accused." The three new sections provide: "The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted" (Code Ann. § 26-603); "A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted" (Code Ann. § 26-604); "A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the acts for which the accused is prosecuted" (Code Ann. § 26-605).

Although these new Code sections go further (in terms of presumption and rebuttal, acts and consequences) in defining intention than the former section, the instruction as given was not an incorrect statement of the law. The complete charge as to malice, intention and accident, sufficiently informed the jury on the law of criminal intention. It is not necessary that the charge be in the exact language of the Code. *Phillips v. State,* 230 Ga. 444 (2) (197 SE2d 720); *Daniels v. State,* 230 Ga. 126 (1) (195 SE2d 900).

3. The defendant also enumerates as error the court's charge on the legal definition of malice without coupling it with an instruction on the defense of accident. He does not contend that the trial court incorrectly stated the law of either malice or accident, but rather he argues

that to charge on malice without connecting it with a charge on accident was confusing and misleading to the jury. To support this position the defendant relies on *Ayers v. State,* 214 Ga. 156 (4) (103 SE2d 574).

In *Ayers* the trial judge erred in charging malice and did not correct that error by charging on accident in connection with malice. However, in *Ayers* the charge on malice was held to be erroneous in that case.

In the present case the charge on malice was not incorrect or confusing and so there was no necessity to immediately follow it with a charge on accident to clarify the previous charge. Both the charges in question here are accurate statements of the law. The charge on the defense of accident, although not given in connection with the instruction on legal malice, makes it clear to the jury that they could acquit the defendant on the basis of accident. After defining accident the court stated: "Now, if you find in this case, Ladies and Gentlemen, that this transaction or this event was a pure accident unmixed with any intention or design on the part of the defendant, then in that event it would be your duty to acquit him of the offense charged against him."

The court did not commit reversible error in not charging the law of accident in conjunction with the charge on malice.

4. The charge on the defense of accident is also cited as error by the defendant because the instruction did not state that accident is an affirmative defense and that therefore the defendant had the burden of showing accident by a preponderance of the evidence. The defendant contends that this omission gave the jury no standard by which to determine if the defendant had carried his burden and that the jury might easily have concluded that the burden was beyond a reasonable doubt. He relies on *Chandle v. State,* 230 Ga. 574 (198 SE2d 289).

In *Chandle* the court held it was not error to charge the jury that accident is an affirmative defense and that the burden is on the defendant to show accident by a preponderance of the evidence. This is not the same as *requiring* such instructions to be given.

Failure to give an instruction on the extent of

defendant's burden of proof, if any, certainly caused no harm to him, and might have been beneficial. In any event we do not find from the charge as given that the jury would be confused or misled to the point that it would apply the reasonable doubt standard to the defendant's defense.

5. The final alleged error also concerns the charge to the jury. The trial court first gave the proper legal definition of involuntary manslaughter quoting Code Ann. § 26-1103 (a). Then the court said: "So, Ladies and Gentlemen, you will look to all the evidence in this case and determine for yourselves the guilt or innocence of the defendant of the offense of involuntary manslaughter as charged. Involuntary manslaughter in the commission of an unlawful act consists in the killing of a human being without intention to do so, but in the commission of an unlawful act *not* other than a felony." (Emphasis supplied.) The defendant candidly acknowledges that the inclusion of the word "not" was a slip of the tongue but contends that it misled and confused the jury and thus prevented the jury from giving proper consideration to the lesser offense of involuntary manslaughter.

Viewing this charge in the context of the full, correct and complete instruction on involuntary manslaughter, we find that this slip of the tongue was not reversible error. Its effect, if any, upon the jury would have been favorable to the defendant rather than harmful, in that it would have permitted the jury to find the defendant guilty of involuntary manslaughter in the commission of a felony rather than limiting involuntary manslaughter to the commission of a misdemeanor. The court did not charge the jury on felony murder and hence the jury could not have been misled by this instruction.

The statutory definition of involuntary manslaughter was given and the jury was made fully aware of its elements.

*Judgment affirmed. All the Justices concur.*

ARGUED APRIL 15, 1975 — DECIDED MAY 27, 1975 — REHEARING DENIED JUNE 17, 1975.

*A. Glen Steedley,* for appellant.

*Arthur K. Bolton, Attorney General, Lewis R. Slaton, District Attorney, Carole E. Wall, Carter Goode, Assistant District Attorneys,* for appellee.