## S04A2003. COOPER v. THE STATE.
(612 SE2d 256)

HINES, Justice.

Shermont Monte Cooper appeals his conviction for the malice murder of Kenneth Ellis.[1] For the reasons that follow, we affirm.

---

[1] Ellis was killed on March 26, 1994. During the 1994 April term of court, a Madison County grand jury indicted Cooper for malice murder. Cooper was tried before a jury on November 8, 1994, and found guilty. On November 9, 1994, he was sentenced to life in prison. On September 18, 2001, the trial court granted Cooper an out-of-time appeal, and Cooper moved for a new trial on September 25, 2001. After hearings on November 20, 2003, and March 12, 2004, the trial court denied Cooper's motion for a new trial on July 16, 2004. Cooper filed his notice of appeal

Construed to support the verdict, the evidence showed that Cooper's mother and Ellis had a romantic, but tumultuous, relationship. The day of the shooting, Cooper's mother paged him several times; he called her back three or four times and she asked for his help to remove her from Ellis's home.[2] While Cooper was at the home of Catrice Watkins, Cooper's mother asked Watkins over the telephone to give Cooper a pistol so that he could help her leave Ellis's house as Ellis had beaten her. Cooper overcame Watkins's reluctance to do so by saying that he would not use the weapon. Watkins did not give it to Cooper, but to his friend Caver;[3] the pistol was not loaded at that time. Cooper, Caver, and Watkins went to Ellis's house in a car driven by another friend, King. When they arrived, Cooper had the now-loaded pistol in his pocket, and walked into the house, followed by Caver and Watkins; King remained in the car. Ellis said something derogatory about Watkins, and Caver and Ellis had a brief struggle; Ellis was pushed to a seating position on the sofa and stated: "I'm going to get you."[4] Cooper shot Ellis in the torso from a distance of approximately five feet, then shot him again in the torso. After a short delay, having approached to within arm's length of Ellis, Cooper shot him a third time, in the mouth, with the pistol's muzzle an inch or two away.

Cooper and his mother left Ellis's home and joined Watkins and Caver outside; they had left before the third shot. The five drove away and stopped for some cigarettes; Cooper returned the pistol to Watkins. Cooper's mother laughed as though the occurrence was "a big joke" and said: "You shot him, Shermont." Cooper told a police investigator that Ellis "got in my face so I just shot him."

1. The evidence was sufficient to enable a rational trier of fact to find Cooper guilty beyond a reasonable doubt of malice murder. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Cooper contends that he did not receive effective representation of trial counsel. In order to prevail on this claim, Cooper must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet

---

on August 4, 2004. The case was docketed in this Court on August 11, 2004, and argued before the Court on November 9, 2004.

[2] In his statement to a police investigator, Cooper said that Ellis took the telephone from Cooper's mother and threatened to kill Cooper the next time he saw him.

[3] Cooper's statement to a police investigator was that he got the pistol from Watkins. Watkins testified that she handed it to Caver.

[4] Watkins testified that she took this comment to apply to all in the room.

the first prong of this test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong, Cooper must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Cooper argues that counsel was deficient in not sufficiently investigating Ellis's violent nature, and then presenting evidence of it to the jury. He contends that had counsel searched for Ellis's criminal convictions in counties other than the one in which he resided, counsel would have discovered that Ellis had previously been convicted of aggravated assault, burglary, felony obstruction of an officer, and possession of a firearm by a convicted felon. He also contends that if counsel had interviewed Cooper's family and other potential witnesses, and met with Cooper more often, counsel would have uncovered similar information about Ellis's violent past and certain specific acts of violence, and that counsel should have secured the services of an independent expert witness to review the physical evidence.[5]

Although the trial court's order states that it "views with caution" the testimony of Cooper and his family concerning what was communicated to counsel ten years earlier during the criminal prosecution,[6] the court did not decide Cooper's motion for new trial on credibility grounds, or even on the ground that counsel's performance was not deficient. Rather, the court found that even assuming that which Cooper now contends should have been done had been done by counsel, the outcome of Cooper's trial would not have been different. This was not error.

As to the evidence Cooper now brings forth concerning the violent character and specific acts of the victim,[7] through Cooper's

---

[5] He also asserts that counsel should have filed a notice of appeal after Cooper's conviction, but does not set forth what grounds counsel should have asserted on appeal.

[6] Counsel testified that he had no specific memory of discussions with Cooper; the trial court noted that documents counsel prepared at the time of representation do not reflect that Cooper gave information to counsel concerning Ellis's violent nature.

[7] We note that this Court has previously warned against trial by "character assassination of the victim." See *Brown v. State*, 270 Ga. 601, 603 (2) (512 SE2d 260) (1999).

own statement to the police investigator, corroborated in part by Watkins, the jury was given considerable information concerning Ellis's violent nature, including that: Ellis had beaten Cooper's mother in the hours before the shooting; she was greatly distressed and wished to leave; she wished her son to be armed when he helped her leave; Ellis threatened Cooper on the telephone; Ellis was willing to engage in a physical confrontation with three, or possibly four, people; he made a verbal threat just before the shooting; and that at the time of his death Ellis had a blood alcohol level of 0.21 grams percent and had consumed cocaine "a couple of hours" before the shooting. The jury was instructed on the principle of justification in the defense of oneself or others, OCGA § 16-3-21, and on the crime of voluntary manslaughter, OCGA § 16-5-2. Nonetheless, the jury rejected both the justification defense and the lesser charge. And, this is not surprising considering the quantity of evidence placed before the jury showing malice, to wit: Cooper armed himself before entering Ellis's home and entered a situation prone to confrontation; he shot Ellis twice from a distance of five feet; after some delay, he shot a third time, at close range, into Ellis's mouth; and Ellis was unarmed.[8] Cooper's statement that Ellis was "charging" him is likewise inconsistent with the evidence, as is Cooper's claim that Ellis "got in his face." The trial court's finding that, even if the evidence Cooper now brings forth had been admitted, there was no reasonable probability that the result of the jury trial would have been different was not clearly erroneous. *Robinson,* supra. Any reliance on *Johnson v. State,* 266 Ga. 380 (467 SE2d 542) (1996), is misplaced. In that case, the trial court made no finding concerning prejudice, ruling solely on the question of whether counsel's performance was deficient. Id. at 382 (2). Compare *Robinson,* supra. See also *White v. State,* 265 Ga. 22, 23 (2) (453 SE2d 6) (1995). Further, in *Johnson,* the evidence of malice did not include the circumstance that the defendant, after already wounding the victim, approached him and, at a close distance, shot him again. See *Landers v. State,* 270 Ga. 189, 191 (4) (508 SE2d 637) (1998) (evidence deemed overwhelming so that, even if counsel's performance was deficient, there could be no showing of a "reasonable probability that the jury would have had a reasonable doubt respecting his guilt. . . .").

Cooper's assertion that counsel should have retained an independent expert witness to review the physical evidence does not establish ineffective assistance of counsel. The expert that Cooper retained for the motion for new trial testified that there was nothing

---

[8] Watkins testified that Ellis was reaching under the sofa. Contradictorily, she also testified that he was reaching for Cooper.

in the evidence that "precluded" Ellis's torso from being twelve to eighteen inches off the sofa when the first bullet struck him, but that in any event, Ellis was seated, leaning against the back of the sofa, when the third shot was fired into his mouth from a distance of an inch or two.[9] The evidence showed that the shooting was done with malice, not in self-defense, nor as the result of some provocation. Again, it was not error for the court to find that, even if counsel had done that which Cooper now claims should have been done, the outcome of the trial would have been no more favorable to him. *Robinson,* supra.

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., Sears, P. J., and Hunstein, J., who dissent.*

FLETCHER, Chief Justice, dissenting.

I dissent, because I conclude that Cooper established that his trial counsel was deficient in failing to investigate and present evidence of the victim's substantial history of violence against the defendant, his mother, and others, and that this deficiency prejudiced Cooper.

To establish a claim of ineffective assistance of counsel at trial, a defendant must show that the attorney's performance was deficient and that the deficient performance prejudiced the defense.[10] On appeal, this Court accepts the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[11]

In this case, the defense was justification and Cooper contends his trial counsel was ineffective in failing to present evidence of the victim's prior acts of violence. At the motion for new trial hearing, Cooper established that the victim in the case had committed several prior acts of violence including an aggravated assault at the home of Cooper's mother, robbery by intimidation, and assault against a uniformed police officer who was attempting to serve a warrant. Cooper also presented evidence of the victim's violent nature when he had been drinking, the victim's long-term abuse of Cooper's mother, and the victim's threatening Cooper and his brother with a gun. Additionally, Cooper established that the victim had a prior conviction for possession of a gun by a convicted felon.

Cooper's trial counsel testified that he did not recall anything

---

[9] Cooper's expert did not dispute the trial testimony of the State's expert that the first shot was fired from a distance of at least four feet. Cooper's expert also testified that it was "highly probable" that Ellis was seated on the sofa for at least one of the first two shots.

[10] *Strickland v. Washington,* 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[11] *Suggs v. State,* 272 Ga. 85, 88 (526 SE2d 347) (2000).

about the case.[12] Cooper testified at the motion for new trial hearing that he told trial counsel about the victim's violent past and extensive criminal record. Cooper's younger brother also testified about the victim's violent past and testified that he was never contacted by trial counsel. Trial counsel's file showed that he knew that the victim was on "active probation," which trial counsel admitted meant that the victim had a criminal record. However, trial counsel's file is devoid of any evidence that counsel attempted to obtain any additional information about the victim's criminal record.

Just a few years before the trial in this case, this Court held that a victim's prior violent acts against the defendant and others is relevant in weighing the defendant's claim of justification.[13] Additionally, the evidence that the victim had a conviction for possession of a gun would have been admissible in light of testimony that it appeared that the victim was reaching for a gun when he was shot.[14] Trial counsel offered no explanation for his failure to investigate the victim's past or his failure to present evidence of the victim's prior violent acts and I conclude that the failure constituted deficient performance.[15]

The question of whether this deficiency was prejudicial requires that this Court examine the evidence that could have been presented in light of the evidence that was before the jury.[16] The evidence at trial showed that Cooper was 17 years old at the time of the shooting. According to his statement to police, which was admitted into evidence, his mother asked him to come help her leave the victim's house, and said that the victim was beating her and she was scared. During one phone conversation that evening, the victim got on the phone and threatened to kill Cooper the next time he saw him. Cooper and his friends Catrice Watkins and Terrence Caver drove to the victim's house to assist Cooper's mother in leaving. When they arrived, the victim pushed Cooper, started to hit Caver, and then came charging at Cooper, at which point Cooper fired the gun.

Watkins testified that when they arrived at the victim's home, it appeared that Cooper's mother had been beaten. The victim started cursing at them and swung at Caver, but missed. Caver then hit the victim, who fell on to the couch. The victim then began reaching under

---

[12] Trial counsel inexplicably failed to file a motion for new trial or to appeal the conviction and thus, the hearing on the motion for new trial occurred ten years after the conviction, after Cooper filed a pro se motion for an out-of-time appeal.

[13] See *Chandler v. State*, 261 Ga. 402, 406 (405 SE2d 669) (1991), adopting special concurrence of Weltner, J., in *Lolley v. State*, 256 Ga. 605, 609-610 (385 SE2d 285) (1989).

[14] See *Wilson v. State*, 152 Ga. 337 (8) (110 SE 8) (1921).

[15] The trial court below did not rule on whether the performance was deficient, but instead based its holding on the prejudice prong alone.

[16] See *Johnson v. State*, 266 Ga. 380, 383 (467 SE2d 542) (1996).

the couch cushion for what Watkins believed was a gun, and threatened the group, saying "I'm going to get you m-f. I'm going to get you." As the victim was coming towards Cooper, Cooper shot him.

No evidence of the victim's prior acts of violence against Cooper, his mother, or others came into evidence. The evidence that the majority focuses on came from Cooper's statement and the testimony of Watkins, who admitted she was a "real close friend" of Cooper's. The jury may well have discounted this evidence as self-serving. Furthermore, the evidence related solely to the events immediately preceding the death of the victim. If the jury had been given the independent evidence of the victim's substantial history of violent acts, I conclude there is a reasonable probability that the result would have been different — either an acquittal or a conviction on the lesser charge of voluntary manslaughter.

This case is substantially similar to *Johnson v. State*,[17] in which this Court reversed a conviction based on the failure of trial counsel to present evidence of the victim's prior acts of violence. In that case, Justice Hunstein, writing for the Court, held that

> [a]lthough the jury heard evidence that, just prior to his death, the victim was drunk, enraged and threatening to kill appellant with a knife or gun, all but one of those witnesses also testified that they saw nothing in the victim's hands. There was no testimony regarding the victim's propensity toward violence; our review of the record fails to confirm counsel's determination that evidence of specific prior acts would have been cumulative. Those witnesses whom counsel chose not to call would have testified to specific occasions when the victim had shot at or otherwise assaulted others or threatened them with weapons. . . . In view of appellant's justification defense, we conclude that appellant has shown a reasonable probability that his trial might have resulted in conviction of a lesser offense, if not of acquittal, had the jury heard those witnesses.[18]

I see no substantial difference between *Johnson* and this case, and accordingly, I conclude that Cooper is entitled to a new trial.

I am authorized to state that Presiding Justice Sears and Justice Hunstein join in this dissent.

---

[17] 266 Ga. at 383.
[18] Id.

DECIDED MARCH 30, 2005.

*Michael B. Nation*, for appellant.

*Dennis C. Sanders, District Attorney, William P. Doupé, Assistant District Attorney, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.

