S07A0844. TAYLOR v. THE STATE.
(653 SE2d 477)

HINES, Justice.
    Kimberly Yvonne Taylor appeals her convictions for felony murder and two counts of possession of a firearm during the commission of a felony, all in connection with the death of Elisha Brown. For the reasons that follow, we affirm in part and vacate in part.[1]
    Construed to support the verdicts, the evidence showed that for two years, Taylor had been in a romantic relationship with Charlotte Harris; the couple had lived together. Four months after they separated, Harris was dating Brown. Taylor wished to speak with Harris, and telephoned Harris and said she would go to Harris's home; Harris told her not to, but Taylor went nonetheless. At Harris's home, Taylor knocked, rang the doorbell, pushed her way past Harris when she came to the door, and then went through the house, turning on the light in a dark bedroom. Harris had been sleeping, and Taylor left. Taylor returned later that day when Harris and Brown were exiting

---

[1] Brown was killed on April 8, 2005. On July 20, 2005, a Clayton County grand jury indicted Taylor for malice murder, felony murder, the aggravated assault of Brown with the intent to murder, the aggravated assault of Brown with a deadly weapon, possession of a weapon during the commission of the crime of murder, and possession of a weapon during the commission of the crime of aggravated assault. Taylor was tried before a jury February 20-22, 2006, and found guilty of all charges. On February 22, 2006, the trial court sentenced Taylor to a term of life in prison for felony murder, a consecutive term of five years in prison for possession of a weapon during the commission of the crime of murder, and a term of five years in prison for possession of a weapon during the commission of the crime of aggravated assault, to be served concurrently with the other term of five years in prison; the court found that the aggravated assaults merged with the felony murder, and the malice murder stood vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). On March 24, 2006, Taylor's trial counsel moved for a new trial; appellate counsel filed a motion for new trial on March 29, 2006. By order entered October 5, 2006, the trial court denied Taylor a new trial; on October 19, 2006, Taylor filed a purported amendment to her motion for new trial. Taylor filed her notice of appeal on November 6, 2006, her appeal was docketed in this Court on February 22, 2007, and submitted for decision on April 16, 2007.

a car in front of Harris's house; Harris's cousin, Nicole Jordan, was in the front yard of her home next door. Taylor repeatedly attempted to speak with Harris, but Harris told Taylor that she did not want to talk. Jordan intervened by asking Taylor for a cigarette, and she and Taylor retrieved a pack of cigarettes from Taylor's car. While at the car, Taylor said to Jordan, "I'm about to slap this B."; Taylor also retrieved a pistol from her car.

When Taylor and Jordan returned to the other women, Harris noticed the pistol under Taylor's shirt and asked Jordan for her cell phone. As Jordan gave the phone to Harris, Taylor drew the pistol and pointed it at Brown. Brown walked backwards with her hands up, and said, "[i]t ain't got to be like this, it ain't got to be like this." Taylor shot her. Brown ran away from Taylor before falling over. Taylor followed. Brown said, "I'm shot," and "You got me. Okay, you got me." Taylor responded by kicking Brown, said "shut up, bitch," and fired the remaining bullets into Brown. Harris had retreated indoors; Taylor walked over to the window where Harris was and said, "I love you, but the bitch had to go." Taylor raised her middle finger before walking away. Brown died from gunshot wounds to her torso.

Taylor called 911, and said she shot a female who "got up in my face." When a police officer responded, Taylor walked toward the officer. The officer asked where the firearm was. The officer testified that Taylor's response was that she "threw the gun next to the house after she shot her." The officer handcuffed Taylor, and police personnel retrieved the weapon. While being transported to the police station, Taylor said: "I did it, and then I called 911." During recorded interviews with police, Taylor admitted that Brown did not have a weapon, and admitted to shooting Brown six times.

1. Taylor challenges the sufficiency of the evidence, contending that the evidence supported at most a conviction for voluntary manslaughter, in that the shooting was "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a).[2] The jury found that Taylor acted with malice, and there was ample evidence of such: she retrieved a pistol from her car and secreted it under her shirt; when she pointed it at Brown, Brown retreated, but Taylor shot her anyway; and when Brown was lying on the ground, Taylor walked to her and shot her until the pistol was empty. See *Somchith v. State*, 272 Ga. 261, 262 (1) (527 SE2d 546) (2000). The jury was instructed on malice murder, felony murder, and

---

[2] Taylor also asserts that the evidence showed that the shooting was done in self-defense, but Taylor did not request that the trial court instruct the jury on the law of justification.

voluntary manslaughter, as well as the other charges in the indictment, and the evidence was sufficient to enable a rational trier of fact to find Taylor guilty beyond a reasonable doubt of the crimes of which she was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Taylor claims that trial counsel failed in several respects to provide effective representation. In order to prevail on this claim, Taylor must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to her defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, the defendant must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of her trial would have been different. Id. at 783. "'We accept accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Taylor asserts that trial counsel should have requested that the jury be instructed on the law of self-defense and justification, claiming that such instructions were authorized by her statements to the 911 operator that: she shot Brown because "[she] jumped in my face, sir, like [she] wanted to fight me"; "she tried to fight me"; and "she walked up at me. She tried to tell me to get the fuck out of her face and tried to push me and that's when I shot her." Taylor also contends that such an instruction was supported by her statements to police investigators that: although Taylor had not previously met Brown, over the telephone Brown stated that she wanted to "merk" Taylor; before the shooting, when Brown was three or four feet away, "she bowed up like she was going to hit me"; and "she started acting like she wanted to fight. That's how she started acting like she wanted to fight . . .. She started standing in front of Charlotte, acting like she was going to buck on me, and that's when it . . .."

At the hearing on the motion for new trial, trial counsel testified that, given the state of the evidence, he did not consider a self-defense strategy to be viable, and would be at odds with the strategy he chose, i.e., to seek a conviction for the lesser crime of voluntary manslaughter. Taylor notes that an inconsistency between two defenses does not

preclude the jury being instructed on each. See *Turner v. State*, 262 Ga. 359, 359-361 (2) (418 SE2d 52) (1992). However, that is not the question; at issue is whether trial counsel's decision not to pursue inconsistent defenses was made in the exercise of reasonable professional judgment. *Strickland*, supra. Pretermitting whether a justification instruction was warranted, see *Bowden v. State*, 270 Ga. 19, 21-22 (3) (504 SE2d 699) (1998), as the evidence from three eyewitnesses showed that Taylor went to her car and retrieved a pistol, shot the unarmed Brown when she was retreating, and then went to where Brown lay and shot her several more times, counsel's professional judgment that any justification defense should be discarded in favor of a strategy of seeking a jury verdict of guilt on the lesser crime of voluntary manslaughter was reasonable. See *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

(b) Taylor claims that trial counsel should have pursued a psychological examination of her to determine whether she could assert the defenses of mental incapacity by insanity, OCGA § 16-3-2,[3] and delusional compulsion, OCGA § 16-3-3.[4] Counsel testified that, based upon his dealings with Taylor, he did not believe that any such examination was necessary. Although Taylor points to a variety of evidence that she contends should have made counsel conclude that a psychological examination would be necessary, and regardless of whether trial counsel had any obligation to seek a psychological evaluation of Taylor under the facts here, Taylor has not shown what the result of any such examination would be, and thus fails to establish prejudice by showing that the result of her trial would have been different if a psychological examination was pursued. *Hinely v. State*, 275 Ga. 777, 781 (2) (b) (573 SE2d 66) (2002).

(c) At trial, Jordan testified that prior to Taylor's pointing the pistol at Brown, Brown had not said anything to Taylor. However, a document prepared by a police officer, styled "Investigative Summary," recorded that Jordan stated that before she went to the car with Taylor, Brown and Taylor "began to argue." Taylor contends that trial counsel was ineffective for not impeaching Jordan with this prior

---

[3] OCGA § 16-3-2 reads:
 A person shall not be found guilty of a crime if, at the time of the act, omission, or negligence constituting the crime, the person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence.

[4] OCGA § 16-3-3 reads:
 A person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime.

inconsistent statement; counsel's cross-examination of Jordan focused on Taylor's appearance during the shooting and whether she might have "snapped." Assuming that counsel's failure to impeach Jordan was deficient performance, at the hearing on the motion for new trial, the trial court found that impeaching Jordan would not have made a difference in the outcome of the trial, and we likewise find no reasonable probability that it would have, and thus Taylor has failed to meet her burden to show prejudice.[5] See *Harris v. State*, 279 Ga. 304, 307 (3) (b) (612 SE2d 789) (2005).

(d) At the hearing on the motion for new trial, Taylor presented the testimony of Rozier that: two or three weeks before the shooting, she was at the convenience store where she worked; Harris, Jordan, and a third woman came in; the store manager told Rozier that he overheard the three women talking and that they intended to beat Rozier; and Rozier related this information to Taylor.[6] Taylor also presented the testimony of Semper that, four or five months before the shooting, Semper drove to retrieve Taylor from an altercation with Harris and three other women, and that Harris and the other three women broke the side-view mirror from Semper's sports utility vehicle in an attempt to prevent Taylor from entering the vehicle. Taylor contends that counsel should have presented this evidence to show Taylor's state of mind for the potential defenses of justification, mental incapacity by insanity, and delusional compulsion. When Taylor questioned trial counsel about why he did not present Rozier's testimony, he said it was not relevant to Taylor's defense of voluntary manslaughter, but that evidence of Harris's acts might have been relevant to a justification defense if Harris had been the shooting victim; counsel was not asked why he did not present Semper's testimony.

First, the trial court found that the proffered testimony would not be admissible over a proper hearsay objection. Further, as trial counsel noted, Harris's prior behavior might have been relevant to a claim of justified self-defense if Taylor had been accused of shooting Harris, but did not support such a defense as to shooting Brown. And, Taylor has failed to demonstrate that defenses of mental incapacity or delusional compulsion were viable, and has not met her burdens under *Strickland*, supra.

3. Taylor was sentenced for both possession of a weapon during the commission of the crime of murder and possession of a weapon

---

[5] At the hearing on the motion for new trial, Taylor did not present evidence from either Jordan or the police officer who created the document.

[6] Rozier testified that she subsequently learned that the third woman was Brown, but she did not testify that she ever informed Taylor of this fact.

during the commission of the crime of aggravated assault. However, as both the murder and the aggravated assault charges involved the same victim, the sentence for possession of a weapon during the commission of the crime of aggravated assault must be vacated. *State v. Marlowe*, 277 Ga. 383, 386 (2) (c) (589 SE2d 69) (2003).

Judgments affirmed in part and vacated in part. All the Justices concur.

DECIDED NOVEMBER 21, 2007.

*David J. Walker*, for appellant.

*Jewel C. Scott*, District Attorney, *Tiffany C. Boulware*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Mary N. Kimmey*, Assistant Attorney General, for appellee.