### S09A0245. BROWN v. THE STATE.
(676 SE2d 221)

CARLEY, Justice.

Billy Ray Brown was charged with the malice murder of Larry Griggs and possession of a firearm during the commission of a crime. After a mistrial, a plea in bar was overruled, and Brown was retried before a jury and found guilty of both offenses. The trial court entered judgments of conviction on the guilty verdicts and sentenced Brown to life imprisonment for the murder and a consecutive five-year term for the weapons offense. A motion for new trial was filed and denied, and Brown appeals.[*]

1. Brown contends that the trial court erred in overruling the plea in bar, because its declaration of a mistrial without considering other available options violated the federal and state constitutional protections against double jeopardy.

The State argues that Brown waived this issue by failing to file a timely direct appeal when the plea in bar was overruled. " 'The denial of a plea in bar on double jeopardy grounds is directly appealable. [Cit.]' [Cit.]" *Langlands v. State*, 282 Ga. 103, 104 (1) (646 SE2d 253) (2007). However, where, as here, the losing party is allowed to obtain review of an interlocutory ruling as a matter of right, but does not put the machinery of immediate appellate review into motion, he is not foreclosed from thereafter submitting the issue for review on appeal from the final judgment. See *Canoeside Properties v. Livsey*, 277 Ga. 425, 427 (1) (589 SE2d 116) (2003); *Mitchell v. Oliver*, 254 Ga. 112, 114 (1) (327 SE2d 216) (1985). Therefore, we will proceed to consider the merits of this enumeration.

Once jeopardy has attached, the trial court may declare a mistrial over the defendant's objection only if there is a manifest necessity therefor, which " 'exists when the accused's right to have the trial completed by a particular tribunal is subordinate to " 'the public interest in affording the prosecutor one full and fair opportunity to present [his] evidence to an impartial jury.' " ' [Cit.]" *Spear-*

---

[*] The crimes occurred on May 3, 2003, and the grand jury returned an indictment on September 22, 2003. The trial court declared a mistrial on November 5, 2003, and overruled the plea in bar on August 2, 2004. At the retrial, the jury found Brown guilty on August 5, 2004 and, on the same day, the trial court entered the judgments. The motion for new trial was filed on August 24, 2004, amended on May 15, 2008 and June 9, 2008, and denied on October 3, 2008. Brown filed the notice of appeal on October 10, 2008. The case was docketed in this Court on October 23, 2008, and submitted for decision on December 15, 2008.

*man v. State*, 278 Ga. 327, 328-329 (1) (602 SE2d 568) (2004). " ' "The trial court is vested with as much authority to grant a mistrial when an injustice occurs to the state as when it occurs to the defendant. (Cit.)" (Cit.)' [Cit.]" *Tubbs v. State*, 276 Ga. 751, 755 (3) (583 SE2d 853) (2003). This " 'decision must take into consideration all the surrounding circumstances. (Cits.)' [Cit.]" *Reed v. State*, 267 Ga. 482, 484 (1) (480 SE2d 27) (1997).

The trial court entered an extensive order that included the following findings which are supported by the record: About one month before the first trial, a person who ostensibly was Brown's sister called Juror Blackmon and left a message with his wife to the effect that Brown is a good person. Mr. Blackmon did not disclose the communication during voir dire or otherwise mention it until the trial court directly questioned him after the State had begun presenting evidence. The trial court excused Mr. Blackmon from further service and told him to deliver a log of his phone calls to the sheriff. However, Mr. Blackmon returned the next morning to a jury area. Upon further questioning of Mr. Blackmon and the remaining jurors, it became apparent that, contrary to the trial court's instructions, they had at some point had a conversation concerning evidence in the case and that Mr. Blackmon had made negative comments in an apparent effort to discredit the prosecution. The trial court then declared a mistrial.

Where, as here, " 'there is no prosecutorial misconduct, the trial court has broad discretion in deciding whether to grant a mistrial.' [Cit.]" *Spearman v. State*, supra at 329 (1).

When a trial court determines that a juror has received an improper communication it may, but is not required to, determine whether the communication had in fact prejudiced the juror before granting a mistrial. [Cits.] Discovery of the harmful communication in itself may support a finding that there was manifest necessity to grant a mistrial. [Cit.] Additionally, the trial court's decision to reject alternatives to granting a mistrial is given great deference, and the availability of another alternative without more does not mean the mistrial was not necessary. [Cit.]

*Reed v. State*, supra. In this case, the trial court initially considered and chose the alternative remedy of dismissing Juror Blackmon. However, he returned and further questioning revealed that he may well have had a bias which infected his communications with the other jurors. Therefore,

[t]his was one of those " 'instances where a trial judge has discovered facts during a trial which indicated that one or

more members of a jury *might* be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial.' (Cit.)" [Cit.] (Emphasis in original.)

*McCrary v. State*, 191 Ga. App. 336, 337 (381 SE2d 579) (1989). See also *Jones v. State*, 232 Ga. 324, 329 (206 SE2d 481) (1974); *Smith v. State*, 278 Ga. App. 315, 320 (3) (628 SE2d 722) (2006).

[A] trial court's failure to examine alternatives short of mistrial is more likely to bar retrial in cases involving prosecutorial abuse than in the present case .... "(A) possibility of juror bias, particularly where, as here, the juror has spent some time in the company of other members of the panel ... is sufficiently detrimental to the impartiality of the fact-finding process to warrant the declaration of a mistrial rather than (any) less extensive remed(ies)." [Cit.] ... Consequently, the trial court's failure to examine other alternatives is of no consequence.

*Wilson v. State*, 217 Ga. App. 544, 545-546 (458 SE2d 486) (1995). See also *Jones v. State*, supra at 333.

"Accordingly, we cannot conclude that the grant of a mistrial was not authorized." *Reed v. State*, supra (where a witness for the State approached several jurors and repeatedly told them that the defendant was not guilty). See also *Smith v. State*, supra (where the defendant's former wife twice spoke to one juror's mother about asking the juror to help the defendant out, and other jurors may have been contacted); *McCrary v. State*, supra (where two jurors received information calculated to evoke sympathy for the defendant, and one of them acknowledged that it would be really hard to discount the communication). "Since the motion for mistrial was properly granted, it follows that [Brown's] plea of double jeopardy was correctly overruled." *McCrary v. State*, supra.

2. Construed most strongly in support of the verdicts, the evidence presented at the retrial shows that Brown's former girlfriend Mecca Henderson and her mother were at her aunt's house, which was located behind the house where Brown lived with his aunt. When Ms. Henderson and her mother encountered Brown outside the houses, they began vehemently arguing with him about an earlier incident, and Ms. Henderson's young cousin subsequently joined in. The victim then drove up, jumped out of his car, and began waving a beer bottle in his hand and arguing with Brown. When beer sloshed out onto Brown, he then ran to his porch and grabbed his gun from a pouch. The victim backed up towards the road, and

Brown began shooting. Although his aunt jumped in front of the victim, telling Brown to stop, he continued to shoot and even tried to fire the weapon after he apparently had run out of ammunition and the victim had fallen into a ditch. Brown immediately fled the scene. The victim died of a gunshot wound to his abdomen. This evidence was sufficient to enable a rational trier of fact to find Brown guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Taylor v. State*, 282 Ga. 693, 694 (1) (653 SE2d 477) (2007); *Cooper v. State*, 279 Ga. 189, 190 (1) (612 SE2d 256) (2005).

3. Citing *Parker v. State*, 218 Ga. 654, 658 (5) (129 SE2d 850) (1963), Brown enumerates as error the trial court's failure to give a charge on voluntary manslaughter even in the absence of a request therefor. However, pre-1976 cases such as *Parker* were overruled in *State v. Stonaker*, 236 Ga. 1, 2 (222 SE2d 354) (1976). "Thus, '(t)he failure of the trial court to charge the law of voluntary manslaughter, absent a written request, was not error. (Cit.)' [Cit.]" *Sparks v. State*, 277 Ga. 72, 74 (2) (586 SE2d 645) (2003). See also *Harris v. State*, 274 Ga. 422, 425 (4) (554 SE2d 458) (2001).

In his reply brief, Brown asserts that he was relieved of the duty to make such a request because, under *Parker*, the omission of a charge on voluntary manslaughter, when supported by the evidence, " ' "is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence. (Cit.)' " [Cit.]" *Shepherd v. State*, 280 Ga. 245, 252 (4) (626 SE2d 96) (2006). However, this language refers to a rare exception to *Stonaker*. *Seay v. State*, 276 Ga. 139, 140 (2) (576 SE2d 839) (2003). Again, *Parker* has been overruled, and to excuse the requirement for a written request whenever the evidence supports a charge on voluntary manslaughter, as Brown urges, would constitute an unwarranted and extreme departure from the very well-settled rules set forth in *Stonaker*.

4. Brown further contends that the trial court erred in finding that defense counsel was not ineffective in failing to request an instruction on voluntary manslaughter even though he later admitted that it should have been charged.

Evidence presented at the hearing on the motion for new trial shows that Brown and his family were extensively "advised on this issue and that [he] decided not to request a voluntary manslaughter charge . . . . [Therefore,] trial counsel [was] not ineffective in failing to request such a charge. [Cit.]" *Lowe v. State*, 264 Ga. 757, 759 (3) (452 SE2d 90) (1994). "[T]he hearing transcript reflects that [Brown] was firmly of the belief he acted in self-defense . . . ." *Roberts v. State*, 263 Ga. 807, 809 (2) (c) (439 SE2d 911) (1994). Thus, Brown's attorney relied upon that defense, which was supported by

some evidence that Mr. Griggs was drunk and that he attacked Brown with the beer bottle, struck him, and was still pursuing him when he pulled his gun out and shot in self-defense. Therefore, trial counsel's performance was consistent with Brown's informed decision "to pursue an 'all or nothing' strategy. [Counsel's] conduct does not amount to ineffective assistance of counsel. . . . [It] comported with [Brown's] strong feelings about pursuing an all or nothing defense. [Cit.]" *Bell v. State*, 226 Ga. App. 271, 274 (7) (c) (486 SE2d 422) (1997). See also *Van Alstine v. State*, 263 Ga. 1, 4 (426 SE2d 360) (1993); *Leonard v. State*, 279 Ga. App. 192, 195 (2) (b) (630 SE2d 804) (2006).

*Judgments affirmed. All the Justices concur.*

DECIDED APRIL 28, 2009.

*David B. Ross*, for appellant.
*Charles M. Ferguson, District Attorney, Megan A. Lane, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.