**THIRD DIVISION**
**DILLARD, J.**
**MCFADDEN and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 22, 2016**

# In the Court of Appeals of Georgia

A15A2171. ADAMS WELLS v. THE STATE.

RICKMAN, Judge.

Adam Wells and Jhurik Forrester were jointly tried for armed robbery, and a jury found them guilty. Following the denial of his motion for new trial, Wells appeals his conviction. He contends that: (1) the trial court erred by denying his motion for a directed verdict of acquittal; (2) the trial court erred by denying his motion to strike a juror for cause; and (3) his trial counsel provided ineffective assistance when he failed to request a lesser included charge of theft by receiving stolen property or theft by taking stolen property. We affirm.

1. Wells contends that the trial court erred by denying his motion for a directed verdict of acquittal on the basis that at the end of the State's case, there was a lack of evidence implicating him in the commission of a crime, and that it was only during

his co-defendant's testimony that evidence revealed Wells's involvement in the incident.

> When a criminal defendant challenges the sufficiency of the evidence supporting his conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction.

(Punctuation and footnotes omitted; emphasis in original.) *Flores v. State*, 308 Ga. App. 368-369 (1) (707 SE2d 578) (2011). "The test established in *Jackson v. Virginia*,[1] is the appropriate one to use when the sufficiency of the evidence is challenged, whether the challenge is from the denial of a directed verdict or the denial of a motion for new trial based upon alleged insufficiency of the evidence." (Punctuation and footnote omitted.) *James v. State*, 316 Ga. App. 406, 408 (1) (730 SE2d 20) (2012).

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Viewed in the light most favorable to the prosecution, the evidence adduced by the State showed the following. Forrester responded to an ad W. G. had placed on Craigslist to sell a laptop computer. On May 29, 2012, around 6:00 p.m., the two met in the parking lot of a certain store to conduct W. G.'s sale and Forrester's purchase of the computer. For his sense of security, W. G. had placed in the driver door pocket of his vehicle a gun. Forrester was dropped off at the location; W. G. parked his vehicle, and Forrester approached.

During the transaction, after W. G. had removed the computer from its box and turned it on, he turned around and Forrester had W. G.'s gun in his hand. Forrester put the gun behind him and wielded a big "kitchen knife" at W. G., demanding W. G. to give up his computer and iPhone. W. G. relinquished the items, and they were placed in a bag. W. G. hit the alarm button on his keys, and Forrester took the bag and ran away. W. G. chased Forrester to "kind of the corner of the building," but stopped when he realized that he was unarmed and Forrester had two weapons. W. G. observed Forrester enter the passenger side of a newer model black Honda Accord vehicle. Surveillance cameras captured images of a matching vehicle arriving and leaving the parking lot around the time of the robbery. Two bystanders, a husband and wife, who had parked their vehicles near W. G.'s vehicle witnessed W. G.

3

running after Forrester in the parking lot. The husband identified Forrester in court as the individual he had seen W. G. chasing. W. G. used another bystander's cell phone to call police and report the incident. A recording of the 911 call was played for the jury.

Through undercover investigation, the next day police detectives located the vehicle they suspected was involved in the armed robbery. At approximately 1:51 p.m., the vehicle was stopped for traffic infractions. Wells was the driver; Forrester was the passenger. The officer who initiated the stop noticed an iPhone in the center console and, knowing that an iPhone was one of the items stolen in the armed robbery the vehicle was suspected of being involved in, asked Wells for consent to search the vehicle. Wells consented. In the trunk, police recovered a "butcher" knife "just kind of laying by itself in the trunk." Police asked Wells about the knife, and Wells looked at Forrester and said "You're the one who was in my trunk." Police continued searching the trunk and located the gun that was taken from W. G.'s vehicle; the gun was wrapped in a t-shirt. Forrester consented to a search of his person. Police recovered from Forrester's person W. G.'s iPhone.

After the State rested, Forrester testified. He admitted that the knife found in the trunk was his and that it was on his person during his interaction with W. G.; but

4

he denied having wielded the knife at W. G. Forrester testified that W. G. brandished a gun, and that he (Forrester) did "instinctively reach and disarm [W. G.] of" the gun. Forrester testified that he threw the gun in a bag and took the bag and ran away, and that W. G. chased him, wielding another gun and threatening to kill him. Wells was waiting nearby in his vehicle, and after Forrester entered, they fled. Wells and Forrester drove with no destination in mind for about 10 to 15 minutes before stopping at a gas station to search the bag. The bag contained an iPhone, a laptop computer, and a gun. Forrester testified that he placed the knife in the trunk; Wells unloaded the gun and wrapped it in a t-shirt; and later that night, he (Forrester) sold the laptop computer.

> Once it is shown that goods were stolen in a robbery, absence of or unsatisfactory explanation of the possession of the goods will support a conviction for robbery based upon recent possession of the stolen goods. Whether a defendant's explanation of possession is satisfactory is a question for the jury; so is lack of explanation.

(Citation, punctuation, and footnote omitted.) *Thomas v. State*, 256 Ga. App. 712, 713 (1) (569 SE2d 620) (2002).

Forrester's testimony linking Wells to the armed robbery was corroborated by evidence of W. G.'s gun being located in the vehicle Wells was driving less than 24

hours after it was reported stolen, and of W. G.'s cellular phone being located on Forrester, a passenger in Wells's vehicle. Moreover, a knife consistent with the description given by W. G. as the one Forrester wielded at him during the robbery was also located in the vehicle, and the vehicle matched the description of the getaway vehicle described by W. G. and captured on surveillance camera images. The totality of the evidence was sufficient to authorize the jury to find Wells guilty beyond a reasonable doubt of intentionally aiding and abetting Forrester in the commission of armed robbery. See *Thomas*, 256 Ga. App. at 713 (1) ("absence of or unsatisfactory explanation of the possession of the goods will support a conviction for robbery based upon recent possession of the stolen goods"). See also *James*, 316 Ga. App. at 408 (1) ("only slight evidence of a defendant's identity and participation from an extraneous source is required to corroborate the accomplice's testimony and support the verdict"); *Smith v. State*, 234 Ga. App. 586, 592-594 (7) (a), (c) (506 SE2d 406) (1998) ("evidence of recent, unexplained (or unsatisfactorily explained) possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the robbery"); and see *Wise v. State*, 325 Ga. App. 377, 380 (1) (752 SE2d 628) (2013) ("[W]e have held that a getaway driver who waits for his

co-defendant to return to the car can be found guilty as a party to the crimes committed by the co-defendant."). Accordingly, this contention is without merit.

2. Wells contends that the trial court erred by denying his motion to strike a juror for cause.

> [F]or a juror in a criminal case to be excused for cause on the statutory ground that her ability to be fair and impartial is substantially impaired, it must be shown that she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will not be able to set it aside and decide the case on the evidence or the court's charge on the evidence. . . . The law presumes that potential jurors are impartial, and the burden of proving partiality is on the party seeking to have the juror disqualified. In the absence of evidence that the juror held a fixed and definite opinion concerning the guilt or innocence of the defendant that she could not set aside and that she could not decide the case on the evidence or the court's instructions, the trial court did not abuse its discretion in failing to excuse her for cause.

(Citations omitted.) *Poole v. State*, 291 Ga. 848, 852 (3) (734 SE2d 1) (2012). "Whether to strike a juror for cause is within the discretion of the trial court and the trial court's rulings are proper absent some manifest abuse of discretion." (Punctuation and footnote omitted.) *Lewis v. State*, 279 Ga. 756, 760 (3) (a) (620 SE2d 778) (2005).

7

Wells urges that prospective juror V. G. should have been excused for cause on the basis that she had formed an opinion as to appellant's culpability and was not subsequently rehabilitated as to her ability to be impartial. The transcript shows, however, that V. G. answered affirmatively when asked whether she could set aside her "opinions on the matter" long enough to listen to the facts of the case and listen to the law that the judge gave in order to make a fair and impartial decision.

> "Nothing in the juror's responses compels a finding that she had formed an opinion of [Wells's] guilt or innocence that was so fixed and definite that she would be unable to set the opinion aside, or that she would be unable to decide the case based upon the court's charge and upon the evidence. It was not an abuse of discretion to refuse to excuse the juror."

(Citation omitted.) Corza v. State, 273 Ga. 164, 167 (3) (539 SE2d 149) (2000); see *Miller v. State*, 275 Ga. 730, 736-738 (5) (571 SE2d 788) (2002).

3. Wells contends that his trial counsel provided ineffective assistance when he failed to request a lesser included charge of theft by receiving stolen property or theft by taking stolen property.

> To prevail on a claim of ineffective assistance, [Wells] must prove both that the performance of his lawyer was deficient and that he was

8

prejudiced by this deficient performance.[2] To prove that the performance of his lawyer was deficient, [Wells] must prove that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. And to prove that he was prejudiced by the performance of his lawyer, [Wells] must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden is a heavy one. We conclude that [Wells] has failed to carry his burden.

(Citations and punctuation omitted.) *Walker v. State*, 296 Ga. 161, 168-169 (3) (766 SE2d 28) (2014).

At the hearing on Wells's motion for new trial, trial counsel testified that after discussion with Wells, "[w]e had an all-or-nothing defense." Trial counsel further testified that he "made the decision that we would force the jury to decide [Wells's] fate on the most serious charge, thinking that based on the evidence presented they would not be able to -- not all 12 of them would be able to decide beyond a reasonable doubt that [Wells] participated in something like that." Trial counsel testified that he sought to prevent the jury from reaching a "compromise verdict."

---

[2] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

9

Whether to request a charge on a lesser crime or to pursue an "all or nothing" defense generally is a matter of trial strategy. *Brown v. State*, 285 Ga. 324, 327-328 (4) (676 SE2d 221) (2009). Here, it was not objectively unreasonable for Wells's lawyer to pursue a defense that was consistent with Wells's claim that he did not participate in the charged crime. Therefore, his trial lawyer's performance was not deficient based upon a failure to request an instruction authorizing the jury to convict on an offense not charged. See generally *Walker*, 296 Ga. at 172 (3) (c); *Brown*, 285 Ga. at 327-328 (4).

*Judgment affirmed. Dillard and McFadden, JJ., concur.*